[Civ. No. 11331. First Appellate District, Division Two.—March 19, 1940.]

COUNTY OF LOS ANGELES, Appellant, v. JOHN F. CRAIG et al., Respondents.

Everett W. Mattoon, former County Counsel, J. H. O'Connor, County Counsel, and Beach Vasey, Deputy County Counsel, for Appellant.

Denio, Hart, Taubman & Simpson for Respondents.

SPENCE, J.—Plaintiff sought by this action to recover personal property taxes alleged to have become due during the years 1932 and 1933 upon a vessel known as the "Mazatlan". By way of defense, it was alleged that said vessel was exempt as it was a vessel of more than fifty tons burden and was at all times registered at a port in this state and engaged in the transportation of freight and passengers. The court found in accordance with defendants' allegations relating to the claim of exemption and entered its judgment in favor of defendants. Plaintiff appeals from said judgment.

Section 4 of article XIII of the Constitution provides, "All vessels of more than fifty (50) tons burden registered at any port in this state and engaged in the transportation of freight or passengers, shall be exempt from taxation except for state purposes . . . "

It is conceded that the "Mazatlan" was a vessel of approximately eight hundred tons burden but plaintiff contends that the evidence was insufficient to support the findings that said vessel was "registered at a port in the state of California and engaged in the transportation of freight and passengers". There was no conflict in the evidence and the problem presented is whether the uncontroverted facts bring said vessel within the meaning of the provisions of the above-mentioned section of the Constitution.

The first question relates to the meaning of the word "registered" as used in said constitutional section. In Webster's New International Dictionary, second edition, the verb

"register" is defined as "To record formally and exactly; to enroll; to enter precisely in a list or the like." (See, also, 53 C. J. 1067.) It thus appears that the word "registered", when used in its ordinary and popular sense, includes within its meaning "enrolled". It further appears that the word "registered" was used in its ordinary and popular sense in our code sections in force at the time of the adoption of the above-mentioned constitutional section in the year 1914 and for many years prior thereto. Section 3644 of the Political Code then read, "All vessels, except ferryboats, which may be registered, of every class which are by law required to be registered, must be assessed, and the taxes thereon paid, only in the county, or city and county, where the same are registered, enrolled, or licensed." It seems plain from the reading of said code section that the word "registered", appearing twice in the first portion thereof, was there meant to include all vessels "registered" at the custom house under what was technically known as registry, enrollment or license. This is made more obvious by a reading of sections 3645 and 3646 of the Political Code as said sections then read, the last-mentioned section relating to "All boats and small craft not required to be registered . . . " It further appears that the use of the word "registered", in its ordinary and popular sense, was carried into certain subsequent amendments of said section 3644 and into certain subsequent headnotes of said sections 3644, 3645 and 3646, the first two sections carrying the headnote "Assessment of registered vessels" and the last section carrying the headnote "Nonregistered boats". (See Deering's Pol. Code, 1931 ed.)

The meaning of the word "registered", as used in said constitutional section, is important here as it is undisputed that the "Mazatlan" was enrolled at a port in this state during the years 1932 and 1933, or as one witness expressed it, was "registered by enrollment". Plaintiff contends that the word "registered", as used in said constitutional section, should be given its technical meaning (see *The Mohawk*, 70 U. S. (3 Wall.) 566 [18 L. Ed. 67]; *Huus* v. *New York & Porto Rico Steamship Co.*, 182 U. S. 392 [21 Sup. Ct. 827, 45 L. Ed. 1146]), while defendants contend that it should be given its ordinary and popular meaning. We are in accord

with the meaning contended for by defendants, which meaning was adopted by the trial court.

The obvious purpose of said constitutional section was to assist the shipping industry in this state and the wording of the section seems quite plain and free from ambiguity. It is well settled that "if the words of an enactment, given their ordinary and popular signification, are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning" (23 Cal. Jur. 730, sec. 109) and that "Where a word, having a technical, as well as a popular meaning, is used in the Constitution, the courts will accord to it the popular meaning, unless the nature of the subject indicates or the context suggests, that it is used in a technical sense." (Treadwell's Const., Cal., Ann., 6th ed., p. vii, and authorities cited.) We find nothing in said constitutional section to indicate that the word "registered" was used in any sense other than its ordinary and popular sense, and the fact that said word had been used in its ordinary and popular sense in our code sections, relating to the assessment and taxation of vessels, for many years prior to the adoption of said constitutional section would seem to lead inevitably to the conclusion that it was so used in said constitutional section. The views which we have expressed find support in the contemporaneous construction of said constitutional section by the officers of the County of Los Angeles, the plaintiff herein. The record shows that vessels similarly "registered" by enrollment, such as the vessels plying to Santa Catalina Island from the mainland, were treated by said county officers as "registered" and exempt from taxation under said constitutional section. We believe that these views find further support in *Wheaton* v. *Weston & Co.*, 128 Fed. 151, one of the authorities cited by plaintiff. While that case recognized the technical distinction between registry, enrollment and license, it was held the phrase "registered tonnage", as used in the statute there under consideration, applied to all vessels, whether under registry, enrollment or license.

We therefore conclude that the uncontradicted evidence showing that the "Mazatlan" was "enrolled" at a port in this state was sufficient to sustain the finding that said vessel was "registered" at a port in this state within the meaning of section 4 of article XIII of the Constitution.

■  The second question raised on this appeal relates to the meaning of the phrase "engaged in the transportation of freight or passengers" as used in said constitutional section. It is contended that the "Mazatlan" was not so "engaged" and that the evidence was insufficient to support the trial court's finding to that effect as said vessel had been tied up at the Craig Ship Building and Dry Dock Company's plant at Long Beach for some time prior to 1932 and did not leave there until August, 1933. The evidence showed, however, that said vessel was designed for the transportation of freight and passengers; that it has been actively used for that purpose for many years and had never been used for any other purpose; that it was laid up and had remained out of such active use only because of business conditions and the inability of its owners to obtain cargo or charter parties; that such lay up, while of long duration, was of a temporary nature; that the engines were turned over regularly and the vessel was kept in condition for active use at all times; and that it was put back into active use in the transportation of freight and passengers in August, 1933. In view of this evidence, we find no merit in plaintiff's contention.

It will be noted that said constitutional section does not use the words "actively engaged in" or even the words "while engaged in" or "when engaged in". The words used are "engaged in". To hold that a vessel designed for the transportation of freight and passengers and used solely for that purpose is not "engaged in the transportation of freight or passengers" within the meaning of said section while temporarily laid up for repairs or because of business conditions would lead to absurd results and would go far toward defeating the purpose of the exemption. It would mean that such vessel would be exempt from taxation only while being actively and continuously used for such transportation and would not be exempt during any period of temporary, enforced idleness. This could not have been the intention of the framers of the section or the intention of the people in adopting the same.

■  We believe that the true test of whether a vessel is "engaged in the transportation of freight or passengers" within the meaning of said section depends upon whether such vessel is regularly used for such purpose and whether

any enforced withdrawal from such use is merely temporary in character. If the vessel is regularly so used and the enforced withdrawal is merely temporary in character, then we are of the view that it is still "engaged in the transportation of freight or passengers" within the meaning of said section. A somewhat similar question was before the court in *Southern Pac. Co.* v. *Pillsbury*, 170 Cal. 782 [151 Pac. 277, L. R. A. 1916E, 916]. That case involved an engine which was regularly used in interstate commerce but which was temporarily withdrawn for the purpose of making necessary repairs. It was held that the engine was engaged in interstate commerce during the time that it was temporarily withdrawn for the purpose of such repairs. The authorities are extensively reviewed in the opinion in that case and the court quoted with approval the following language on page 790: "Under the existing facts, can the length of time required for the repairs change the legal situation? If so, where is the line to be drawn? How many days temporary withdrawal would suffice to take it out of the purview of the act? And is it material whether the repairs take place in the roundhouse or in general shops? Is not the test whether the withdrawal is merely temporary in character?" Such test was applied in that case and we believe it should be applied under the circumstances before us.

We therefore conclude that the evidence was sufficient to sustain the finding that the "Mazatlan" was "engaged in the transportation of freight and passengers" was entitled to exemption from taxation by plaintiff under said constitutional section.

The conclusions which we have reached make it unnecessary to discuss defendants' further contentions relating to the statute of limitations.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.