[S. F. No. 22642. In Bank. Apr. 23, 1969.]

JOHN GALVAN, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; CITY AND COUNTY OF SAN FRANCISCO et al., Real Parties in Interest.

854

J. Edward Fleishell, Kirk Lambert Kirk, Charles L. Powell and Herbert C. Kohlwes for Petitioner.

Thomas M. O'Connor, City Attorney, Edmund A. Bacigalupi and William R. Lowery, Deputy City Attorneys, for Respondent and for Real Parties in Interest.

PETERS, J.—This is a petition for writ of mandate by John Galvan, a resident, taxpayer and firearms owner in San Francisco, in which he attacks the constitutionality of ordinance No. 175-68, the so-called San Francisco gun law. The ordinance, enacted in July 1968, provides for the registration of all firearms within San Francisco, with certain exceptions.[1]

Galvan contends that the San Francisco gun law is void because the law conflicts directly with state laws regulating firearms, and, even if construed to avoid a direct conflict, invades the field of weapons control, which has assertedly been preempted by the state. He also claims that the law violates the right to bear arms, guaranteed by the Second Amendment, the privilege against self-incrimination clause of the Fifth Amendment, and the due process clause of the Fourteenth Amendment.

We reject all of these contentions, and hold that San Francisco Ordinance No. 175-68 is a valid exercise of local police power, neither in direct conflict with nor impliedly preempted by state laws concerning weapons, and violative of no provision of the United States or California Constitutions.

PREEMPTION—*Conflict With State Law*

Galvan argues that the San Francisco gun law is void because the law directly conflicts with Penal Code section 12026, which states that "no permit or license" shall be required of any adult citizen (with certain limitations not at

[1]San Francisco Ordinance No. 175-68 provides: (1) It shall be unlawful for any person within San Francisco to own, possess or control an unregistered firearm (San Francisco Mun. Code, § 610). (2) Any person temporarily in San Francisco must register firearms brought with him within seven days after arrival (§ 610.1). (3) The registration application shall include the name and address of the owner, and a description of the firearm; the registration fee shall be $2.00 (§ 610.2 (amended August 7, 1968, to reduce the fee to $1.00)). (4) The chief of police upon registering a firearm shall issue a certificate of ownership, which shall remain valid "until suspended, revoked, or cancelled by the Chief of Police for cause . . . ." (§ 610.3.) (5) On transfer of firearm ownership, the transferee must apply for a transfer of ownership (§ 610.4). (6) The penalty for violation of the law is a fine of $500 or 6 months in jail or both (§ 610.5). (7) The clauses are severable (§ 610.8).

issue) to keep a concealable firearm at his residence or place of business.[2]

The validity of the San Francisco law is governed by the California Constitution, article XI, section 11, which restricts local lawmaking to "all such local, police, sanitary and other regulations as are not in conflict with general laws." Any local law that directly conflicts with state legislation is void. (*In re Mingo,* 190 Cal. 769, 771 [214 P.2d 850]; cf. *Natural Milk etc. Assn.* v. *City etc. of San Francisco,* 20 Cal.2d 101, 110 [124 P.2d 25].)

Section 12026, however, prohibits licenses or permits. The section does not prohibit registration requirements. The meaning of "register" is "[t]o record formally and exactly; to enroll; to enter precisely in a list or the like." (*County of Los Angeles* v. *Craig,* 38 Cal.App.2d 58, 59-60 [100 P.2d 818], citing Webster's New International Dictionary (2d ed.); and see, *Bergevin* v. *Curtz,* 127 Cal. 86, 88 [59 P. 312] [voter registration does not "add to the qualifications required of electors, nor abridge the right of voting; . . ."]; *Minges* v. *Board of Trustees,* 27 Cal.App. 15, 17-18 [148 P. 816].) The meaning of "license," however, is permission or authority to do a particular thing or exercise a particular privilege. (*San Francisco* v. *Pacific Tel. & Tel. Co.,* 166 Cal. 244, 249 [135 P. 971]; *Blatz Brewing Co.* v. *Collins,* 69 Cal.App.2d 639, 643 [160 P.2d 37].)

Any requirement that an item be registered before it can be lawfully used involves, of course, "permission to do a particular thing," and to that extent "registration" is the same as "licensing." But the basic, and commonly held, distinction between licensing and registration is that licensing regulates activity based on a determination of the personal qualifications of the licensee, while registration catalogs all persons with respect to an activity, or all things that fall within certain classifications.[3] Thus, voter registration lists

---

[2]Penal Code section 12026: "Section 12025 [prohibiting the carrying of concealed weapons] shall not be construed to prohibit any citizen of the United States over the age of 18 years who resides or is temporarily within this State, and who is not within the excepted classes prescribed by Section 12021 [prohibiting concealable firearms to aliens, former felons, or narcotic addicts], from owning, possessing, or keeping within his place of residence or place of business any pistol, revolver, or other firearm capable of being concealed upon the person, *and no permit or license to purchase, own, possess, or keep any such firearm at his place of residence or place of business shall be required of him.*" (Italics added.)

[3]Former President Johnson's Special Message on Gun Control Laws submitted to Congress on June 24, 1968 (114 Congressional Record,

merely enumerate all those persons who satisfy the requirements (are "licensed") to vote. (See *Bergevin* v. *Curtz, supra,* 127 Cal. 86, 88; *O'Brien* v. *City of Saratoga Springs* (1928) 131 Misc. 728 [228 N.Y.S. 82, 83-84], affd., 224 App. Div. 124 [229 N.Y.S. 613].) Similarly, recording statutes provide for the listing of property titles and other documents. (See, e.g, Gov. Code, § 27320 et seq.)

Concededly, the distinction between licensing and registration has not always been reflected in all types of legislation. (See, e.g., *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1, 6 [330 P.2d 385] [Los Angeles "registration certificate" for electrical contractors, issuance and revocation of based on qualifications of applicant]; *Smith-Rice Heavy Lifts, Inc.* v. *County of Los Angeles,* 256 Cal.App.2d 190, 198 [63 Cal.Rptr. 841] [where registered vessels exempt from taxation, "registered" includes "licensed or enrolled" vessels].)

But the language of the Dangerous Weapons' Control Act, and the legislative history of the statutes comprising the act, make clear that at least for purposes of weapons regulations, the Legislature recognized and acted on the commonly held distinction. (See *County of Los Angeles* v. *Craig, supra,* 38 Cal.App.2d 58, 60-61 [meaning of "registered" should be given ordinary and popular meaning].)

For example, the local police may issue a "license" to carry a weapon, upon proof that the applicant is "of good moral character" and has "good cause" (Pen. Code, § 12050); the applicant must have a "reason" for desiring a "license" (Pen. Code, § 12051); "permit" for machine guns and tear gas weapons may be issued upon proof of "good cause" (Pen. Code, §§ 12230, 12423), and "a permit" to possess a destructive device may be issued upon a showing that the possessor is a "bona fide collector" (Pen. Code, § 12306). (Cf., licenses to sell concealed weapons (Pen. Code, §§ 12070-12072).)

"Register," however, is used only in connection with the information required to be compiled and submitted by weapons dealers. (Pen. Code, §§ 12073-12077.) Thus, every person in the business of selling concealable firearms "shall keep a

H 5371 (H.Doc.No. 332)), reflects the clear distinction between "registration" and "licensing" as used in gun control legislation: "To assure the protection of our people, Federal law needs two additional reinforcements: — A national registration of all firearms, both those already in private hands and those acquired in the future. — Federal licensing of all possessors of firearms in those States whose laws fail to meet minimum Federal standards."

register in which shall be entered the time of sale, the date of sale, the . . . salesman . . . the place where sold, the make, model, manufacturer's number, caliber, or other marks of identification. . . .'' (Pen. Code, § 12073.)

Even more significant is the development of the Dangerous Weapons' Control Act. In 1917, a law was passed prohibiting the carrying of concealed firearms in cities and towns without a ''license'' as ''hereinafter provided'' (Stats. 1917, ch. 145, § 3, at p. 221), and authorizing local police to issue such a ''license'' on proof that the ''person applying . . . is of good moral character, . . .'' (*Id.*, § 6, at p. 222.) The same law provided for dealers maintaining a ''register'' of sales. (*Id.*, § 7, at pp. 222-225.) In 1923, the provision prohibiting carrying concealed firearms without a license was changed to concealable weapons (Stats. 1923, ch. 339, § 2, at p. 696), and a paragraph added—substantially, Penal Code section 12026, that ''no permit or license'' could be required to possess a firearm at one's residence or place of business. (*Id.*, § 5, at p. 697.) The language of the provisions governing the issuance of ''licenses'' to carry weapons and ''registers'' for dealers, although expanded, remained otherwise intact. (*Id.*, §§ 8, 9, pp. 698-701.)

The Legislature, then, recognized precisely the distinction between ''registration'' and ''licensing.'' The Legislature intended that the right to possess a weapon at certain places could not be circumscribed by imposing any requirements, such as ''good moral character'' (except the exclusions in Pen. Code, § 12025) upon the person possessing the weapon. The Legislature associated ''permits'' and ''licenses'' with a determination of character and cause. The Legislature used ''register'' differently from ''license'' or ''permit,'' yet included in Penal Code section 12026 only the language ''no permit or license.''

It is equally apparent that the San Francisco ordinance is a registration law.

The prerequisites to issuing the certificate of ownership are clear: ''(a) The name and address of the owner; (b) A description of the firearm, including the following data, insofar as they may exist: the make, model, manufacturer's number, caliber or other marks of identification of such firearm.'' (§ 610.2.) The chief of police ''shall'' then issue a certificate of ownership, which certificate ''shall contain'' the information provided in the registration application. (§ 610.3.)

The authority vested by the ordinance in the chief of police to revoke "for cause" does not transform San Francisco's gun registration ordinance into a licensing law. The same section, requiring the chief of police to issue such a certificate and describing the information to be contained in the certificate, includes the provision authorizing the chief of police to suspend, revoke or cancel the certificate "for cause." We are satisfied that the term "for cause" refers to the requirements for registration and means defects on the face of the registration, such as a false description or false name or address.

We conclude that the San Francisco registration requirement does not conflict with the permit and licensing provision of section 12026 of the Penal Code.

*Preemption by Implication*

Galvan contends that even if the San Francisco gun law does not directly conflict with any state statute, the gun law is void because the state has preempted the entire broad field of weapons control. A local ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by the general law. (Cal. Const., art. XI, § 11; *In re Hubbard,* 62 Cal.2d 119, 125 [41 Cal.Rptr. 393, 396 P.2d 809]; *In re Koehne,* 59 Cal.2d 646, 649 [30 Cal.Rptr. 809, 381 P.2d 633]; *In re Loretizo,* 59 Cal.2d 445, 446 [30 Cal.Rptr. 16, 380 P.2d 656]; *In re Lane,* 58 Cal.2d 99, 102 [22 Cal.Rptr. 857, 372 P.2d 897], and cases cited therein.) Whenever the Legislature has adopted a general scheme for the regulation of a particular subject, no local legislation on that subject is permissible. (*In re Lane, supra,* 58 Cal.2d at p. 102, and cases cited therein; *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674, 682 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385].)

To determine whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the " ' 'whole purpose and scope of the legislative scheme.' " (*In re Lane, supra,* 58 Cal.2d at pp. 102-103.)

*In re Hubbard, supra,* 62 Cal.2d 119, 128, established three tests to determine whether a subject has been preempted by the Legislature. " (1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount

state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.''

The subject matter of the ordinance, as we have seen, is gun registration. The only statutory provisions for registering guns—that is, for maintaining a list of firearms and their owners—are directed towards the registration of firearms sold by gun dealers (Pen. Code, §§ 12073-12078; 12350, 12351) and mail orders (Pen. Code, § 12079). The only other provisions even relating to gun registration concern the obliteration of weapons identification marks. (E.g., Pen. Code, §§ 12090-12094.)

These statutes cannot reasonably be said to show a general scheme for the regulation of the subject of gun registration, and there is no basis for a conclusion that these statutes show a legislative intent to make the subject of gun registration immune from local regulation.

Galvan does not contend to the contrary; his position is that the registration statutes, when coupled with the large number of statutes dealing with guns and other weapons show that the Legislature has preempted the entire broad field of gun control or weapons control and that gun registration as a subject included within the broad field of gun or weapons control must be deemed preempted.

Although Galvan cites a great number of statutes relating to weapons, these statutes do not show that the entire area of gun or weapons control has been so fully and completely covered by general law, in the words of *Hubbard*, ''as to clearly indicate that [the subject] has become exclusively a matter of state concern.'' (62 Cal.2d at p. 128.) There are various subjects that the legislation deals with only partly or not at all. We have already seen the limited statutory provisions for gun registration. Another example is, with regard to the related subject of licensing, the Legislature has not authorized or prohibited the licensing of rifles or shotguns.

Further, there are some indications that the Legislature did not believe that it had occupied the entire field of gun or weapons control. Thus, the Legislature has expressly prohibited requiring a license to keep a concealable weapon at a residence or place of business. (Pen. Code, § 12026.) Such a statutory provision would be unnecessary if the Legislature believed that all gun regulation was improper.

The fact that there are numerous statutes dealing with guns or other weapons does not by itself show that the subject of gun or weapons control has been completely covered so as to make the matter one of exclusive state concern.[4]

To approach the issue of preemption as a quantitative problem provides no guidance in determining whether the Legislature intends that local units shall not legislate concerning a particular subject, and further confounds a meaningful solution to preemption problems by offering a superficially attractive rule of preemption that requires only a statutory nose-count. Thus, in the instant case, by grouping weapons licensing, registration and prohibitions, and offenses involving the

[4]The Penal Code statutes cited by Galvan may be classified as involving crimes and punishments involving the use of firearms (e.g., Pen. Code, §§ 171c, 171d, 417, 467, 12022, 12560); prohibited types of weapons (e.g., Pen. Code, §§ 12020, 12029, 12220, 12420); prohibited classes of weapons users (e.g., Pen. Code, §§ 12021, 12021.5); licensing provisions (e.g., Pen. Code, §§ 12026, 12050-12054, 12423-12426), and registration provisions (e.g., Pen. Code, §§ 12073-12079). Also cited are sections in the California Fish and Game Code, Health and Safety Code, Public Resources Code, and Vehicle Code.

The following is a detailed listing of the sections of the Penal Code cited: 171c (loaded firearms prohibited within government offices); 171d (loaded firearms prohibited within constitutional officer's residence); 171e (loaded firearms defined); 245 (assault with deadly weapon); 247 (discharging firearm at airplane prohibited); 417 (exhibiting weapon in a threatening manner prohibited); 467 (possession with intent to assault prohibited); 4574 (bringing weapons into prison prohibited); 4854 (executive pardon, possession of firearms); 12000 (''The Dangerous Weapons' Control Law''); 12001 (concealable firearms defined); 12002 (law enforcement exemption); 12003 (partial invalidity clause); 12020 (blackjacks, explosives, and daggers prohibited); 12021 (possession of concealable firearms by aliens, felons, and narcotic addicts prohibited); 12021.5 (concealable firearms, possession by minors); 12022 (armed felony, punishment); 12023 (intent to commit armed felony); 12025 (carrying unlicensed concealable weapon prohibited); 12026 (exemption, firearm at residence or business); 12027 (persons exempt); 12028 (weapons as nuisance); 12029 (blackjacks as nuisance); 12030 (firearms delivery to armed forces); 12031 (carrying loaded firearms in public prohibited); 12050 (local licensing, concealed weapons); 12051 (licenses contents); 12052 (fingerprints for license); 12053 (license filing); 12054 (license fee); 12070 (license to sell concealable weapons); 12071 (firearms retailer licensing); 12072 (prohibited transactions); 12073 (firearms retailers' register); 12074 (register forms); 12075 (register forms); 12076 (registration procedure); 12077 (register form); 12078 (exemptions); 12079 (mail orders); 12090 (firearms identification marks); 12091 (presumption of alteration); 12092 (assignment of numbers); 12093 (unauthorized assignment of numbers); 12094 (possession of unmarked pistol prohibited); 12200 (machine guns defined); 12201 (exemptions); 12220 (machine guns prohibited); 12230 (permits for machine guns); 12231 (applications); 12232 (permits); 12233 (permit revocation); 12250 (license to sell machine guns); 12251 (machine guns, nuisance); 12301 (destructive devices defined); 12302 (exemptions); 12304 (punishment, ammunition sales); 12305 (destructive device, permits); 12306 (permits, nonbusiness); 12307 (destructive device, nuisance); 12350 (pistols, sales register); 12351 (punishment); 12400

use of firearms, the very volume of statutes might suggest that the Legislature has covered, and preempted the field. Language in *In re Lane, supra,* 58 Cal.2d 99, 110 (concurring opinion), that "the general intent may be found in a multiplicity of statutes taken together" of course presupposed closely related statutes.

The task is, as shown in *Hubbard,* to determine whether the state has occupied a relevant field—an area of legislation which includes the subject of the local legislation, and is sufficiently logically related so that a court, or a local legislative body, can detect a patterned approach to the subject. Thus, that the state has legislated concerning the possession of loaded firearms on government premises (e.g., Pen. Code, §§ 171c-171e) indicates no patterned approach to the subject of prohibited users, such as prisoners or ex-felons or minors. A field cannot properly consist of statutes unified by a single common noun. (See *Markus* v. *Justice's Court,* 117 Cal.App. 2d 391, 396-397 [255 P.2d 883] [local licensing of dogs not preempted by state].)

In *In re Hubbard, supra,* 62 Cal.2d 119, 125-126, we recognize that the Legislature had preempted some areas of gambling such as horse-wagering (*In re Loretizo, supra,* 59 Cal.2d 445, 447), lotteries (*People* v. *Cole,* 226 Cal.App.2d 125, 127 [37 Cal.Rptr. 798]), gambling houses (*People* v. *Franks,* 226 Cal.App.2d 123 [37 Cal.Rptr. 800]), and certain games of chance, but we held that the Legislature had preempted neither all gambling, or more specifically, regulation of all games of chance. Similarly, here the numerous statutes cited by Galvan indicate that some areas of weapons control have been preempted,[5] but because of the substantial areas left unregulated and the very limited regulation of gun registration, the statutes cannot be said to show that the entire field

---

(shell, cartridge defined); 12401 (tear gas defined); 12402 (weapon defined); 12403 (exemptions); 12420 (tear gas weapons unlawful); 12421 (manufacturer's name); 12422 (alteration mark); 12423 (permits); 12424 (applications); 12425 (inspection of permit); 12426 (revocation of permits); 12435 (licenses to sell); 12500 (silencers defined); 12501 (exemptions); 12520 (unlawful possession); 12550 (minors, firearm sales); 12551 (punishment, sale to minors); 12552 (furnishing firearms to minors); 12560 (possession by certain felons).

[5]Thus, that the state has preempted the field of knife-like weapons (*People* v. *Bass,* 225 Cal.App.2d Supp. 777, 782 [33 Cal.Rptr. 365]) does not determine either whether the state has preempted all aspects of weapons control or the relevant field of firearms registration. We need not discuss whether *Bass* was correct in stating that *People* v. *Jenkins,* 207 Cal.App.2d Supp. 904 [24 Cal.Rptr. 410] and *People* v. *Commons,* 64 Cal.App.2d Supp. 925 [148 P.2d 724], which both upheld a Los Angeles ordinance forbidding the transportation of a deadly weapon in

of gun or weapons control has been so completely covered as to indicate an intent on the part of the Legislature to make gun registration exclusively a subject of state concern.

■ The second standard set forth in *Hubbard* contemplates that the Legislature may preempt a field even though the statutes are not so comprehensive as to indicate an intent to occupy the field if there has been partial coverage of the field by general law couched in such terms as to indicate that there is a paramount state concern which will not tolerate further or additional local requirements. (62 Cal.2d at p. 128.) No statute has been called to our attention which expressly states that gun registration or gun or weapons control is exclusively a matter of state concern. Although language in statutes might reasonably imply a legislative intention that a paramount state concern will not permit regulation by other agencies (see e.g., *Chavez* v. *Sargent*, 52 Cal.2d 162, 213 [339 P.2d 801] [local right-to-work law] ; *Tolman* v. *Underhill*, 39 Cal.2d 708, 713 [249 P.2d 280] [University of California loyalty oath]), we do not find such an implied legislative intent here.

Insofar as we have been able to find any language in the statutes which might be said to show a legislative intent to preempt or not to preempt the fields of gun registration or gun or weapon control, the inferences to be drawn appear to be conflicting. Section 25840 of the Government Code provides that a board of supervisors may prohibit the unnecessary firing of firearms on or into highways or other public places, and it could be argued that such express permission would be unnecessary unless the Legislature believed that it had occupied the field of gun control. On the other hand, section 12026 of the Penal Code, as we have seen, prohibits the requirement of a license to possess a concealable weapon in a residence or business establishment, and it could be argued that adoption of this provision was unnecessary unless the Legislature believed it had not occupied the field of gun control.

The issue of ''paramount state concern'' also involves the question ''whether substantial, geographic, economic, ecological or other distinctions are persuasive of the need for local

---

an automobile, have been ''overruled'' by *In re Lane, supra,* 58 Cal.2d 99 (225 Cal.App.2d Supp. at p. 781), since both cases (and *Bass*) were decided before the adoption in 1967 of Penal Code section 12031, subdivision (a), which forbids carrying a loaded firearm on the person or in a vehicle in public, with certain exceptions. The continuing vitality of *Jenkins* and *Commons* must, therefore, be tested against the new statute.

control, and whether local needs have been adequately recognized and comprehensively dealt with at the state level.'' (*Robins* v. *County of Los Angeles*, 248 Cal.App.2d 1, 9 [56 Cal.Rptr. 853].)

That problems with firearms are likely to require different treatment in San Francisco County than in Mono County should require no elaborate citation of authority. Such differences were recognized in *People* v. *Jenkins, supra,* 207 Cal. App.2d Supp. 904, 907, *People* v. *Commons, supra,* 64 Cal. App.2d Supp. 925, 932 [see fn. 5, *supra*], and in *Gleason* v. *Municipal Court,* 226 Cal.App.2d 584, 587 [38 Cal.Rptr. 226]. The need for differential treatment of firearms was also recognized by the Legislature in section 25840 of the Government Code, which, as noted, authorizes counties to ''prohibit and prevent the unnecessary . . . discharge of firearms. . . .''

We are persuaded by language in *In re Hoffman,* 155 Cal. 114, 118 [99 P. 517, 132 Am.St.Rep. 75] : ''The state in its laws deals with all of its territory and all of its people. The exactions which it prescribes operate (except in municipal affairs) upon the people of the state, urban and rural, but it may often, and does often happen that the requirements which the state sees fit to impose may not be adequate to meet the demands of densely populated municipalities; so that it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements.''

The third standard presented in *Hubbard* is whether the subject matter has been partially covered by general law, and ''the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.'' (62 Cal.2d at p. 128; see also, *In re Lane, supra,* 58 Cal.2d at p. 111 (concurring opinion).)

We find that the San Francisco gun law places no undue burden on transient citizens. Indeed, the ordinance was drafted to prevent such a burden. The law, applicable to firearms possessed by persons in San Francisco, provides for a seven-day exemption,[6] and thus excludes those transients who might otherwise be burdened.

---

[6]''Sec. 610.1. Nonresidents; Registration Procedure. Any person who is temporarily in . . . San Francisco and who brings into said City and County any firearm of a type required to be registered . . . shall register . . . within seven (7) days after his arrival . . . .''

Galvan contends that hunters traveling through the state would be adversely burdened if several counties or cities passed similar ordinances, especially if such ordinances contained minimal exemption periods, for example, one day. We need not determine, however, as an abstract

The law, then, interferes less with transients than, for example, the Fresno ordinance prohibiting the consumption of alcoholic beverages on the street (*People* v. *Butler,* 252 Cal. App.2d Supp. 1053, 1057 [59 Cal.Rptr. 924]), the Los Angeles gambling ordinance (*People* v. *McGennis,* 244 Cal.App.2d 527, 533 [53 Cal.Rptr. 215]), or the Los Angeles loitering ordinance (*Gleason* v. *Municipal Court, supra,* 226 Cal.App.2d 584, 587)—all of which were found not preempted by state law, and all of which apply to *anyone* within the geographic confines of the city, and not merely to residents.

Finally, Galvan's reliance on *In re Lane, supra,* 58 Cal.2d 99, is misplaced. *Lane,* defining the relevant field as "criminal aspects of sexual activity" (58 Cal.2d at p. 102), invalidated a Los Angeles ordinance which attempted to make sexual intercourse between persons not married to each other a criminal act (*id.,* at p. 105).

The conclusion in *Lane* that the Legislature had preempted the entire field of proscribed sexual activity and the inference that the Legislature intended that simple fornication not be a crime, was compelled by an analysis of the relevant Penal Code sections. For example, certain types of sexual activity have been proscribed (e.g., Pen. Code, §§ 286, 287, 288a), and all sexual activity in certain circumstances has been proscribed (e.g., Pen. Code, §§ 261, 268, 647). Further, although "living in a state of cohabitation and adultery is prohibited . . . neither simple fornication or adultery alone nor living in a state of cohabitation and fornication has been made a crime in this state." (*In re Lane, supra,* 58 Cal.2d at p. 104.) In these circumstances, the omission of simple fornication could not reasonably be construed to reflect a legislative intent to allow local option in determining criminal sexual activity.

The considerations involved in *Lane* do not apply to the instant case. The statutory pattern governing sexual behavior differs from that governing guns and other weapons, and there is no extensive coverage of gun registration as there is of criminal sex offenses; registration, as discussed above, is limited to the dealer registration and mail order provisions (Pen. Code, §§ 12073-12079 ; 12350).

---

proposition, the minimum number of days used in a local ordinance to define "resident," which would save the ordinance from being an undue burden on transients. Further, we need not decide whether a definition of "resident" in connection with weapons legislation that might be permissible in an urban area, would be impermissible in a rural area which attracts vacationing hunters.

■ In summary, we find that the Legislature has not adopted a uniform statutory scheme governing gun registration, that the absence of provisions governing registration does not reflect a legislative intent to prohibit local registration, that the San Francisco gun law imposes no undue burden on transients, and that the differing community needs for gun registration within the state justify local regulation of the subject. The San Francisco gun law is not void on grounds of state preemption.

*Right to Bear Arms*

■ The claim that legislation regulating weapons violates the Second Amendment has been rejected by every court which has ruled on the question. (*Burton* v. *Sills*, 53 N.J. 86 [248 A.2d 521, 525-529]; *United States* v. *Miller* (1939) 307 U.S. 174, 178 [83 L.Ed. 1206, 1209, 59 S.Ct. 816]; *Miller* v. *Texas* (1894) 153 U.S. 535, 538 [38 L.Ed. 812, 813, 14 S.Ct. 874]; *Presser* v. *Illinois* (1886) 116 U.S. 252, 264-265 [29 L.Ed. 615, 618-619, 6 S.Ct. 580]; *United States* v. *Cruikshank* (1875) 92 U.S. 542, 553 [23 L.Ed. 588, 591-592]; *United States* v. *Tot* (3d Cir. 1942) 131 F.2d 261, 266, reversed on other grounds, 319 U.S. 463, 472 [87 L.Ed. 1519, 1526-1527, 63 S.Ct. 1241]; *Jackson* v. *State* (1953) 37 Ala.App. 335, 338 [68 So.2d 850]; *State* v. *Woodward* (1937) 58 Idaho 385, 391 [74 P.2d 92, 114 A.L.R. 627]; *Matthews* v. *State* (1958) 237 Ind. 677, 685-686 [148 N.E.2d 334]; *McCollum* v. *City of Cincinnati* (1935) 51 Ohio App. 67, 68 [199 N.E. 603]; *Matter of Moore* v. *Gallup* (1943) 267 App.Div. 64, 67-68 [45 N.Y.S.2d 63]; *State* v. *Cartwright* (1966) 246 Ore. 120 [418 P.2d 822, 830], cert. denied, 386 U.S. 937 [17 L.Ed.2d 810, 87 S.Ct. 961]; *State* v. *Krantz* (1945) 24 Wn.2d 350, 353 [164 P.2d 453].)

Those portions of the California Dangerous Weapons' Control Act which have been challenged have been upheld as not violative of the Second Amendment. (*People* v. *Garcia,* 97 Cal.App.2d 733, 734 [218 P.2d 837] [Pen. Code, § 12021]; *People* v. *Wells,* 68 Cal.App.2d 476, 480-481 [156 P.2d 979] [Pen. Code, § 4502].) It is long since settled in this state that regulation of firearms is a proper police function. (*In re Rameriz,* 193 Cal. 633, 650, 652 [226 P. 914, 34 A.L.R. 51]; *People* v. *Lovato,* 258 Cal.App.2d 290, 295 [65 Cal.Rptr. 638].)

*Self-Incrimination*

■ Galvan contends that the gun law is unconstitutional, because if felons, aliens or narcotic addicts, who are

barred under Penal Code section 12021 from owning or possessing concealable firearms, complied with the gun law, they would incriminate themselves with respect to section 12021. He relies on *Haynes* v. *United States* (1968) 390 U.S. 85 [19 L.Ed.2d 923, 88 S.Ct. 722]. *Haynes* held that the privilege against self-incrimination is a valid defense to prosecution for violation of a statute requiring registration of machine guns, sawed off shotguns, and silencers where the statute applied almost exclusively to persons who by complying would automatically be subject to prosecution for violation of other statutes prohibiting possession of such implements. (390 U.S. at pp. 99-100 [19 L.Ed.2d at pp. 933-934].)

However, *Haynes* did not hold that statutes requiring disclosure of information could not be enforced against persons who did not face any substantial hazard of self-incrimination. As made clear in a companion case involving a wagering tax, *Marchetti* v. *United States* (1968) 390 U.S. 39, 61 [19 L.Ed.2d 889, 905, 88 S.Ct. 697], "we do *not* hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who *properly assert* the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. If, in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise outside the privilege's protection, nothing we decide today would shield him from the various penalties prescribed. . . ." (Italics added.) (See also, *Grosso* v. *United States,* 390 U.S. 62, 69 [19 L.Ed.2d 906, 912-913, 88 S.Ct. 709].)

Thus, *Marchetti* makes clear that even if the provisions of the San Francisco gun law were not "neutral on their face and directed at the public at large" (*Albertson* v. *SACB,* 382 U.S. 70, 79 [15 L.Ed.2d 165, 171-172, 86 S.Ct. 194], construing *United States* v. *Sullivan* (1926) 274 U.S. 259 [71 L.Ed. 1037, 47 S.Ct. 607, 51 A.L.R. 1020]), the gun law would not be unconstitutional. At most—and we do not purport to rule on the issue—a person who could "properly assert the constitutional privilege" (*Marchetti* v. *United States, supra,* 390 U.S. 39, 61 [19 L.Ed.2d 889, 905]) would not be subject to criminal prosecution for failure to register. (See also, *Burton* v. *Sills, supra,* 248 A.2d 521, 530; *Grimm* v. *City of New York* (1968) 56 Misc.2d 525 [289 N.Y.S.2d 358, 364].) Galvan does not claim that he is a member of one of the classes forbidden to possess weapons.

DUE PROCESS—*Notice*

Galvan contends that the San Francisco gun law violates due process because the law "makes absolutely no provision for knowledge to be an element of the offense of nonregistration." Galvan's reliance on *Lambert* v. *California* (1957) 355 U.S. 225 [2 L.Ed.2d 228, 78 S.Ct. 240], is misplaced. *Lambert* involved a Los Angeles ordinance which made it unlawful for any convicted person to remain in Los Angeles for more than five days without registering. (355 U.S. at p. 226 [2 L.Ed.2d at p. 230].) The court made clear that the evil in the *Lambert* ordinance was to penalize the very act of existing: "Violation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test." (355 U.S. at p. 229 [2 L.Ed.2d at p. 232].) Thus in *Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d 674, 680, we noted that if the Los Angeles statute were to be interpreted as not requiring knowledge, the ordinance would be unconstitutional under federal law.

The San Francisco gun law, however, does not penalize mere existence; the penalty is imposed upon the possession of unregistered firearms. (See *People* v. *Gory,* 28 Cal.2d 450, 454 [170 P.2d 433] [possession of marijuana]; *People* v. *Mendoza,* 251 Cal.App.2d 835, 842 [60 Cal.Rptr. 5] [possession of concealable firearm by alien].)

Except under the unique circumstances of *Lambert,* knowledge of the law is not a requirement of due process. "The only knowledge required is knowledge of the character of the object possessed; knowledge that the possession is illegal is unnecessary." (*People* v. *Mendoza, supra,* 251 Cal.App.2d 835, 843.)

In *People* v. *Gory, supra,* 28 Cal.2d 450, 454, we held that "While it thus appears that 'mere possession . . .' is sufficient to constitute the statutory offense in question [possession of marijuana], without regard for *scienter* or specific intent to violate the law . . . the matter of knowledge in relation to defendant's awareness of the presence of the object [is] a basic element of the offense. . . ." (Italics omitted.)

Galvan does not contend that the law violates due process because one might unknowingly possess a firearm. Although the statute in *Gory* specified "wilful possession" (28 Cal.2d at p. 451), the absence of such language does not invalidate the San Francisco law. (*People* v. *Mendoza, supra,* 251 Cal. App.2d 835, 843 [possession by alien of concealable weapon]; *Burks* v. *United States* (9th Cir. 1961) 287 F.2d 117, 125, cert. denied, 369 U.S. 841 [7 L.Ed.2d 846, 82 S.Ct. 868]

[wagering tax] ; see also, *People* v. *Kuhn,* 216 Cal.App.2d 695, 697 [31 Cal.Rptr. 253], construing Rev. & Tax. Code, § 19401 [misdemeanor not to file income tax return "with or without intent to evade any requirement"].)

*Powers Conferred Upon Chief of Police*

 Galvan argues that the powers conferred on the chief of police by the San Francisco gun law are "arbitrary, excessive and vague and thus violate the due process clause of the Fifth and Fourteenth Amendments. . . ." Some of the contentions under the rubric of due process are frivolous; none has merit.

Contrary to Galvan's allegations, the ordinance provided for sufficient time for persons in possession of firearms to register. The law was to take effect 45 days from date of final passage. The police chief cannot "unreasonably delay" issuing a certificate of ownership, after application for registration, or reregistration upon transfer is made. Although no time is specified, the mandatory "shall issue" makes clear that unreasonable delay would be improper. That time limits need not be specifically enumerated is shown by the state legislation, on which Galvan otherwise relies, concerning permits for weapons. (E.g., Pen. Code, §§ 12052 [forwarding fingerprints of applicants to carry concealed weapon] ; 12230 [issuance of permits for machine guns] ; 12423 [permits for tear gas weapons].)

Finally, both San Francisco and Galvan have submitted materials concerning the desirability of weapons control, and the effect of weapons control on crime rates. It is well established that the wisdom of legislation is beyond the competence of the court (e.g., *County of Sacramento* v. *Hickman,* 66 Cal.2d 841, 854 [59 Cal.Rptr. 609, 428 P.2d 593]) ; that for a court to invalidate legislation based on the usefulness or desirability of the law, the law must be not only unwise but unrelated to any legitimate governmental purpose (e.g., *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control,* 65 Cal.2d 349, 359, 363 [55 Cal.Rptr. 23, 420 P.2d 735]). The arguments made in this connection, although of possible interest to the Legislature, are without merit in this court.

The alternative writ of mandate is discharged, and the stay heretofore issued is terminated. The peremptory writ of mandate is denied.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.