[No. A033285. First Dist., Div. Two. Sept. 22, 1989.]

CENTRAL VALLEY CHAPTER OF THE 7TH STEP
FOUNDATION, INC., et al., Plaintiffs and Appellants, v.
EVELLE J. YOUNGER, as Attorney General, etc., et al., Defendants
and Appellants.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for partial publication. The portion to be published follows.

146

**COUNSEL**

Peter E. Sheehan and Katharine S. Miller for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Catherine A. Rivlin, Deputy Attorneys General, for Defendants and Appellants.

**OPINION**

**KLINE, P. J.—**

### INTRODUCTION

In this case we address the constitutionality of various policies and practices followed by the California Department of Justice, its Bureau of Crimi-

nal Identification and various officials thereof, including the Attorney General (hereinafter collectively referred to as defendants), in disseminating state summary criminal history information (arrest records) to public employers and licensing entities. Plaintiffs[1] brought two actions challenging a range of policies implemented by the defendants. The Alameda County Superior Court entered a judgment in these consolidated actions granting in part and denying in part plaintiffs' requests for declaratory and injunctive relief.

Plaintiffs appeal those portions of the judgment holding lawful the dissemination policies and practices of defendants with respect to employers exempt from the requirements of Labor Code section 432.7 and refusing to require the department to provide fee waiver forms to local agencies. Defendants have cross-appealed from those portions of the judgment granting injunctive relief and declaring that various policies and practices of the defendants violated the right to privacy embodied in article I, section 1 of the California Constitution and denied plaintiffs equal protection of the laws.

We will conclude the dissemination of arrest records to authorized agencies for employment, licensing and certification purposes significantly affects plaintiffs' right to privacy guaranteed by the California Constitution. We reject defendants' contention that the Department of Justice or its Bureau of Criminal Identification is merely a repository or conduit for information and has no duty whatsoever to verify, update, or censor information received before disseminating it. Because the dissemination of arrest record information impinges on the fundamental privacy rights of Californians, defendants may disseminate such information only when dissemination serves a compelling state interest. We will conclude that dissemination of information regarding arrests not resulting in convictions to nonexempt employers and licensing agencies for employment, licensing, and certification purposes is not justified by a compelling state interest. We will also conclude that the state has a compelling interest in providing criminal justice agencies, which are exempt from Labor Code section 432.7, with all information essential to permit them to make informed and intelligent evaluations of persons seeking employment as peace officers. Information as to

---

[1] Plaintiffs in Central Valley Chap. 7th Step Foundation v. Younger are a taxpayer, the Central Valley Chapter of the 7th Step Foundation, its executive director, and two individual plaintiffs on behalf of all persons whose California summary criminal history (1) contains or will contain notation of a detention or arrest that did not result in a conviction and (2) has been or will be disseminated for public employment evaluation purposes. Plaintiffs in the Gresher et al. v. Deukmejian et al. case, consolidated with Central Valley prior to trial, include taxpayer Gresher and an individual plaintiff on behalf of a class, challenging policies surrounding the ability of individuals to review their own arrest records.

an arrest or detention that resulted in the arrestee's successful completion of diversion or his exoneration[2] is not necessary to such evaluations. Because incomplete records of an arrest or detention not indicating any final disposition may not serve the compelling state interest we identify (as would be the case if, unknown to defendants, the arrestee or detainee successfully completed diversion or was exonerated), and because there is a substantial governmental interest in insuring that the record of an arrest or detention is complete, we shall hold that defendants may not disseminate incomplete information as to an arrest or detention without first making a genuine attempt to determine if the arrestee successfully completed a diversion program, or was exonerated. We shall hold lawful defendants' refusal to provide fee waiver forms to local agencies and strike certain portions of the judgment as superfluous.

## STATEMENT OF THE CASE[3]

Plaintiffs in the *Central Valley* action filed their initial complaint in 1977. That complaint challenged defendants' policy of disseminating arrest records containing nonconviction entries for nonexempt employment purposes. The superior court sustained defendants' demurrer to the complaint without leave to amend. In *Central Valley Chap. 7th Step Foundation* v. *Younger* (1979) 95 Cal.App.3d 212 [157 Cal.Rptr. 117] (hereinafter *Central Valley I*), Division Three of this court reversed the subsequent judgment of dismissal, holding that the allegations of the complaint stated a prima facie violation of the state constitutional right of privacy.

Thereafter, on August 13, 1979, a separate complaint was filed by taxpayer plaintiff Gresher and an individual plaintiff on behalf of a class, challenging the policies surrounding the ability of individuals to review their own arrest records.

---

[2] For the meaning of "exoneration," see footnote 5, *post*.

[3] The following designations will be used throughout this opinion:

(1) *"arrest record"* refers to a state summary criminal history information (Pen. Code, § 11105, subd. (a)(2)(i)), also commonly known as the "rap sheet;"

(2) *"nonconviction entries"* refers to those entries on an arrest record which indicate arrests or detentions not followed by convictions;

(3) *"nonexempt employer"* refers to an employer covered by Labor Code section 432.7, subdivision (a), prohibiting an employer, "whether a public agency or private individual or corporation" from seeking or using in any way a record of arrest which did not result in a conviction or a record regarding participation in any diversion program;

(4) *"exempt employer"* refers to an employer exempted from the prohibitions of Labor Code section 432.7, subdivision (a). In general this includes peace officers and other "positions in the Department of Justice or other criminal justice agencies as defined in Section 13101 of the Penal Code . . . ." (Lab. Code, § 432.7, subd. (d).)

In 1980, defendants answered the *Central Valley* complaint and defendant Deukmejian was substituted for defendant Younger.

In 1982, plaintiffs in *Central Valley* amended their complaint, expanding the issues raised.

Defendants answered the amended *Central Valley* complaint and the *Gresher* complaint in 1982.

*Summary Adjudication Orders*

Between November 1981 and June 1984, three judges of the Alameda County Superior Court issued five orders granting summary adjudication of issues.

The first, issued by Judge Donald P. McCullum on November 3, 1981, found defendants' policy of disseminating arrest records containing entries of arrests occurring within the preceding 12 months *without dispositions* to nonexempt employers (those subject to Lab. Code § 432.7) violated the right of privacy protected by article I, section 1 of the California Constitution.

The second and third orders granting summary adjudication and permanent injunctions were issued by Judge Winton McKibben in November of 1982. The second order found that dissemination of arrest records containing *nonconviction entries* to *nonexempt employers* and to community colleges for nonpeace officer employment violated the job applicant's right to privacy and enjoined such dissemination. The third order found a similar violation of privacy in the dissemination of arrest records containing *successful diversion entries* to agencies for employment and licensing purposes without the consent of the divertee. The court enjoined defendants from disseminating such records to *any agency for employment or licensing purposes* without such consent and declared Labor Code section 432.7, subdivision (h) and Penal Code section 11105 unconstitutional to the extent they authorize, permit, or require the dissemination of arrest records containing successfully completed diversion entries without prior consent.

A fourth summary adjudication order issued by Judge McKibben in March of 1983 extended the requirements of the third order to evaluation for a certificate to engage in a business or profession and required defendants to submit a plan for the court's approval describing in detail how defendants would insure arrest records containing successful diversion in-

formation would not be disseminated to agencies for employment, licensing, or certification purposes.

On June 7, 1984, Judge John Sutter issued a fifth order granting in part and denying in part plaintiffs' motion for summary adjudication and permanent injunction. The court found that dissemination of arrest records containing *nonconviction* entries for *licensing evaluation* purposes[4] to various state and local licensing agencies violated the right to privacy protected by state and federal constitutions, and enjoined such dissemination. The court found dissemination for licensing and employment purposes of entries indicating the *subject had been exonerated* to similarly violate state and federal privacy rights. The court enjoined dissemination of arrest records containing *exoneration entries* to *any agency for employment or licensing evaluation* purposes.[5] The court found triable issues of fact as to whether defendants' deletion or purge policies violated equal protection guaranties of the state and federal constitutions and denied summary adjudication on those issues.

*The Judgment*

The Central Valley and Gresher cases were consolidated for trial. Following trial before the Honorable Jacqueline Taber, judgment was rendered on July 29, 1985, accompanied by a statement of decision. Those portions of the judgment challenged on this appeal found the following policies and practices violated California constitutional privacy and equal protection guaranties and permanently enjoined defendants from:

---

[4]License evaluation encompasses evaluations for any license, certificate, registration or other means to engage in a business or profession regulated by the Business and Professions Code other than the licensure or registration of persons pursuant to The State Bar Act—chapter 4 (§ 6000 et seq.) of division 3, The Gaming Registration Act—chapter 5 (§ 19800 et seq.) of division 8, or The Alcoholic Beverage Control Act—division 9. (§ 23000 et seq.) It also includes licensure or certification pursuant to specified local ordinances.

[5]This order defined "exoneration entries" as "an entry on an arrest record indicating the individual was arrested or detained and thereafter exonerated (see Pen. Code, § 11115 subdivision (b))." Penal Code section 11115, subdivision (b) deals with "exoneration" as follows: "If either of the following dispositions is made, the disposition report shall so state: . . . (b) 'Detention only,' when the detained party is released pursuant to paragraph (1) of subdivision (b) of Section 849 [dealing with release from custody by a peace officer of a person arrested without warrant under circumstances by which the arrest is deemed a "detention"] or issued a certificate pursuant to subdivision (b) of Section 851.6 [providing for issuance of certificate of detention where a person is arrested and released with no accusatory pleading filed charging him with an offense]. In such cases the report shall state the specific reason for such release, indicating that there was no ground for making a criminal complaint because (1) further investigation *exonerated* the arrested party . . . ." (Pen. Code, § 11115, subd. (b), italics added.) We use the terms "exonerated" and "exoneration" to refer to the determination by investigating authorities that the suspect was in fact *innocent*.

First, disseminating to nonexempt employers arrest records containing information concerning an arrest without a final disposition unless defendants verify that no verdict has been reached in a currently pending action or that diversion is pending, or unless California case or statutory law provides for dissemination of the information to "partially exempt" employers;

Second, disseminating to any licensing agency arrest records containing information concerning an arrest without a final disposition unless defendants verify that no verdict has been reached in a pending action or that diversion is pending, or unless dissemination is authorized by case or statutes covering information to be released to licensing agencies;

Third, disseminating to licensing agencies not covered by Business and Professions Code section 475[6] records of an arrest that has not resulted in a conviction, unless defendants verify that no verdict has been reached in a pending action, or unless dissemination is authorized by case law or statutes relating to the release of information to licensing agencies;

Fourth, disseminating any information concerning juvenile detention or arrest occurring before January 1, 1962, that did not result in a disposition.

Finally, defendants were ordered to: delete any items required to be deleted by law or the judgment in a manner that does not make the fact of deletion apparent to the receiving entity; comply with the order as quickly as reasonably possible; and report regularly on compliance to plaintiffs and the court.

The court ruled in defendants' favor in several respects. First, the court upheld defendants' policy of disseminating to exempt employers for em-

---

[6]Business and Professions Code section 475 provides: "(a) Notwithstanding any other provisions of this code, the provisions of this division shall govern the denial of licenses on the grounds of:
"(1) Knowingly making a false statement of fact required to be revealed in an application for license;
"(2) Conviction of a crime;
"(3) Commission of any act involving dishonesty, fraud or deceit with the intent to substantially benefit himself or another, or substantially injure another; and
"(4) Commission of any act which, if done by a licentiate of the business or profession in question, would be grounds for suspension or revocation of license.
"(b) Notwithstanding any other provisions of this code, the provisions of this division shall govern the suspension and revocation of licenses on grounds specified in subdivision (a)(1) and (2) above.
"(c) A license shall not be denied, suspended, or revoked on the grounds of a lack of good moral character or any similar ground relating to an applicant's character, reputation, personality, or habits."

ployment evaluation purposes, unexpurgated information concerning arrests. The court refused to require defendants to obtain dispositions prior to disseminating arrest information, refused to require defendants to ascertain with respect to a diversion entry whether diversion had been successfully completed, and refused to require defendants to obtain information as to specific reasons for a release.

The court additionally upheld defendants' policy of refusing to provide waiver forms to local law enforcement offices for use by indigent individuals seeking waivers of the application fee for review and copying of their arrest records.

Finally, the court upheld the practice of collection and storage of complete criminal histories; found the authorizing statutes constitutional; found a compelling state interest in the collection, maintenance and dissemination of criminal histories in a lawful manner; and found that the authorizing statutes comply with 42 United States Code section 3789g(b).

The court declined to rule on whether the challenged practices violated any statutory provisions other than those specified and stated that the permanent injunctions and summary adjudication orders issued previously would remain in effect.

*Statutory Scheme*

In *Central Valley I, supra,* 95 Cal.App.3d 212, 223-225, the court described the salient provisions of the statutory scheme as follows:

"The dissemination of arrest records and their consideration for employment purposes are chiefly governed by Labor Code section 432.7 and Penal Code section 11105. [Fn. omitted.]

"Penal Code section 11105 contains various provisions respecting the statutory duty of the Department of Justice to maintain and disseminate arrest records. [Fn. omitted.] Subdivision (a)(1) mandates that the 'Department of Justice shall maintain state summary criminal history information [arrest records]' [Fn. omitted.] Subdivision (a)(2)(i) defines state summary criminal history information (arrest records) . . . .

"Subdivision (b) of section 11105 provides that the Attorney General shall furnish arrest records to any of the persons or entities described thereafter 'when needed in the course of their duties, provided that when information is furnished to assist an agency, officer, or official of state or local government, a public utility, or any entity, in fulfilling employment, cer-

tification, or licensing duties, the provisions of . . . 432.7 of the Labor Code shall apply: . . .'

"Included among the persons or entities to which the Attorney General is mandated to furnish arrest records are 'Any city or county, or city and county, or district, or any officer, or official thereof when access is needed in order to assist such agency, officer, or official in fulfilling employment, certification, or licensing duties, and when such access is specifically authorized by the city council, board of supervisors or governing board of the city, county, or district when such criminal history information is required to implement a statute, ordinance, or regulation that expressly refers to specific criminal conduct applicable to the subject person of the State summary criminal history information, and contains requirements or exclusions, or both, expressly based upon such specified criminal conduct.' (§ 11105, subd. (b)(10.) Also included is 'Any person or entity when access is expressly authorized by statute when such criminal history information is required to implement a statute or regulation that expressly refers to specific criminal conduct applicable to the subject person of the State summary criminal history information, and contains requirements or exclusions, or both, expressly based upon such specified criminal conduct.' (§ 11105, subd. (b)(12).)

"Labor Code section 432.7 contains a number of provisions respecting access, use and disclosure of arrest records. Subdivision (a) of Labor Code section 432.7 provides that no employer shall ask an applicant for employment to disclose information concerning an arrest or detention which did not result in conviction or information concerning a referral to and participation in any pretrial or posttrial diversion program. By virtue of Labor Code section 432.8, this same limitation now applies to information concerning a conviction for violation of Health and Safety Code section 11357, subdivisions (b) or (c) or a statutory predecessor thereof, or Health and Safety Code section 11360, subdivision (b), or Health and Safety Code sections 11364, 11365 or 11550 as they related to marijuana prior to January 1, 1976, or a statutory predecessor thereof, two years from the date of such a conviction. An employer is also prohibited from seeking or utilizing as a factor in determining any condition of employment any record of arrest or detention which did not result in conviction or any record regarding a referral and participation in any pretrial, or posttrial diversion program, or any record of any conviction for violation of any of the above described Health and Safety Code provisions two years from the date of such conviction. (Lab. Code, §§ 432.7, subd. (a), 432.8.)

"Labor Code section 432.7 contains various exceptions to these limitations upon employers. First, an employer is not prohibited from asking an

employee or applicant about an arrest for which the employee or applicant is out on bail or on his or her own recognizance pending a trial. (Lab. Code, § 432.7, subd. (a).) An employer at a health facility, as defined in Health and Safety Code section 1250, is not prohibited from asking an applicant seeking employment for a position with regular access to patients to disclose an arrest under any section specified in section 290. (Lab. Code, § 432.7, subd. (e)(1).) Such an employer is likewise not prohibited from asking an applicant seeking employment for a position with access to drugs and medication to disclose any arrest under any section specified in Health and Safety Code section 11590. (Lab. Code, § 432.7, subd. (e)(2).)" (*Central Valley I, supra,* 95 Cal.App.3d at pp. 223-225.)

Labor Code section 432.7 expressly does not pertain to persons applying for employment as a peace officer or for positions in the Department of Justice or other criminal justice agencies defined in Penal Code section 13101. (Lab. Code, § 432.7, subd. (d).)

"Subdivision (f) of Labor Code section 432.7 imposes limitations upon the dissemination, receipt and possession of arrest records maintained by a local law enforcement criminal justice agency. Peace officers or employees of a law enforcement agency with access to arrest records maintained by a local law enforcement criminal justice agency and other persons authorized by law to receive arrest records maintained by a local law enforcement criminal justice agency are prohibited from knowingly disclosing any information contained therein or received therefrom pertaining to an arrest or detention or proceeding which did not result in a conviction, including information pertaining to a referral to and participation in any pretrial or posttrial diversion program, to any person not authorized by law to receive such information. (Lab. Code, § 432.7, subd. (f)(1) and (2).) The receipt or possession of criminal justice record information maintained by a local law enforcement criminal justice agency, pertaining to an arrest or other proceeding which did not result in a conviction, including information pertaining to a referral to and participation in any pretrial or posttrial diversion program, by any person, except those specifically referred to in Evidence Code section 1070 (e.g., publisher, editor or reporter), with knowledge that such receipt or possession of such information is not authorized by law is also expressly prohibited. (Lab. Code, § 432.7, subd. (f)(3).)

"If an employer unintentionally violates Labor Code section 432.7, an applicant may bring an action to recover actual damages or $200, whichever is greater, plus costs and reasonable attorney's fees. An intentional violation of Labor Code section 432.7 entitles the applicant to treble actual damages or $500, whichever is greater, plus costs and reasonable attorney's

fees. An intentional violation also constitutes a misdemeanor. (Lab. Code, § 432.7, subd. (b).) These same penalties are applicable to conduct by employers in violation of Labor Code section 432.8.

"Subdivision (h) of section 432.7 of the Labor Code, which is highly relevant to the issues presented in the instant case, provides: 'Nothing in this section shall require the Department of Justice to remove entries relating to an arrest or detention not resulting in conviction from summary criminal history records forwarded to an employer pursuant to law.'" (*Central Valley I, supra,* 95 Cal.App.3d at pp. 225-226.)

I.

### Defendants' Cross-appeal

We address defendants' cross-appeal first. We do so for two reasons. The trial court found, and the parties concede, that plaintiffs are the prevailing parties on this appeal, despite their failure to obtain all the relief they sought. More importantly, analysis and resolution of defendants' claims— that the statutory scheme adequately protects privacy rights and that the Department of Justice and its Bureau of Criminal Identification are no more than a repository and conduit for information with no duty to edit or to insure completeness of the information they disseminate—best exemplifies defendants' overall approach to the central issues in this case and helps move the discussion from general privacy analysis to the more specific claims regarding exempt agencies raised in plaintiffs' appeal.

### A. Defendants' Claim to Be Only a Repository

Defendants mount a broadly based challenge to those portions of the judgment finding their dissemination policies and practices violative of the right of privacy under the California Constitution and violative of equal protection. Rather than challenge specific portions of the judgment, defendants assert that the statutory scheme as a whole makes sense, serves a compelling state interest in promoting informed and efficient law enforcement, and provides adequate protection for individual privacy rights.[7]

---

[7]Defendants challenge the findings that certain of their practices violate the right to privacy and deny plaintiffs equal protection of the laws. Although not challenging any particular paragraph, it is fairly clear defendants appeal that portion of the judgment enjoining dissemination to licensing entities and nonexempt employers of arrest records without dispositions and the dissemination to licensing entities of nonconviction dispositions. Plaintiffs argue defendants have waived any challenge to the five summary adjudication orders by failing to summarize the material facts or to request a statement of decision.

■ Defendants maintain that the focus of the action is misplaced, as the Attorney General is only responsible for collecting and keeping information provided by local law enforcement agencies. (Pen. Code, § 11105, subd. (a)(2).) They insist that the responsibility for providing timely, accurate, and complete information devolves upon local law enforcement agencies, prosecutors, and courts which require the end-product reports. According to defendants, there is no restriction on the type of information the Department is permitted to send to authorized agencies. Defendants therefore conclude that "[t]he burden falls on the authorized agencies to use only information relevant to their evaluation." We disagree.

### B. *Right to Privacy*

Article I, section 1 of the California Constitution, adopted by the voters as a constitutional amendment in 1972, explicitly includes the right of privacy as an inalienable right. (*Central Valley I, supra,* 95 Cal.App.3d 212, 234; see *White* v. *Davis* (1975) 13 Cal.3d 757, 773 [120 Cal.Rptr. 94, 533 P.2d 222].)

■ "The adoption of the amendment was intended to strengthen the right of privacy. 'The elevation of the right to be free from invasions of privacy to constitutional stature was apparently intended to be an expansion of the privacy right. The election brochure argument states: "The right to privacy is much more than 'unnecessary wordage.' It is fundamental to any

---

We conclude defendants' general contention that the system does not violate privacy or deny equal protection is sufficient to raise the issue as to all portions of the judgment which rest entirely on either or both of those bases, except those summary adjudication orders resulting in permanent injunctions from which defendants have not appealed.

By the same token, we deem that defendants do not challenge those portions of the judgment resting upon other grounds. These include:

Enjoining defendants from disseminating the response of "record unavailable per Welfare and Institutions Code § 204" when defendants maintain a record of a juvenile arrest or detention without a disposition. (The court found a violation of Welf. & Inst. Code, § 204, as well as privacy and equal protection guaranties under the California Constitution.);

Enjoining defendants from releasing any arrest information absent certification on the face of the document requesting information that the agency is authorized to receive the requested information. (The court found a violation of due process as well as privacy.);

Enjoining defendants from failing to list all reasons submitted to defendants for the dismissal of a charge and all reasons for the release of the subject. (The court found defendants' policy violated Pen. Code, § 11116.6, due process and privacy guaranties of the state and federal Constitutions.);

Enjoining dissemination of information pertaining to arrests without a final disposition if more than 90 days have expired since defendants received a final disposition for the arrest. The court found defendants' practice, which in many cases caused a delay of approximately 18 months between receipt of disposition information and entry in the defendants' records, violated due process as well as privacy under the California Constitution.

free society. Privacy is not now guaranteed by our State Constitution. This simple amendment *will extend various court decisions* on privacy to insure protection of our basic rights." (Cal. Ballot Pamp. (1972) p. 28.) (Italics added.)' (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 829 . . . .)" (*Central Valley I, supra,* 95 Cal.App.3d at p. 235.)

As discussed by the California Supreme Court in *White* v. *Davis, supra,* 13 Cal.3d 757, 775, the principal "mischiefs" at which the amendment is directed are: "(1) 'government snooping' and the secret gathering of personal information; (2) the overbroad collection and retention of unnecessary personal information by government and business interests; (3) the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party; and (4) the lack of a reasonable check on the accuracy of existing records. Second, the statement makes clear that the amendment does not purport to prohibit all incursion into individual privacy but rather that any such intervention must be justified by a compelling interest. Third, the statement indicates that the amendment is intended to be self-executing, i.e., that the constitutional provision, in itself, 'creates a legal and enforceable right of privacy for every Californian.'" (See also *Central Valley I, supra,* 95 Cal.App.3d at pp. 235-236.)

Since adoption of the amendment, California courts have held a broad range of interests to be protected by the right to privacy. (See *Hooper* v. *Deukmejian* (1981) 122 Cal.App.3d 987 [176 Cal.Rptr. 569]; *Central Valley I, supra,* 95 Cal.App.3d at p. 236, and cases there cited.)

The cases most significant to our inquiry are *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859 [132 Cal.Rptr. 464, 553 P.2d 624], and the prior Court of Appeal opinion in this case, *Central Valley I, supra,* 95 Cal.App.3d 212. In *Loder,* the Supreme Court recognized that the right of privacy was infringed by the official retention and dissemination of arrest records containing nonconviction data. However, because "the risks have been greatly diminished in recent years by significant legislative and executive action" (17 Cal.3d at p. 869), which were described in the opinion, and the "multiple purposes for which police, prosecutors, courts, and probation and parole authorities may consult records of arrests not resulting in conviction . . ." (*id.,* at p. 868), the court held arrest records could be maintained by defendants to aid law enforcement and criminal justice agencies.

In *Central Valley I* the court agreed that *Loder* allowed the Department of Justice to *maintain* arrest records to aid law enforcement and criminal justice. The court noted, however, that this compelling interest did not

extend to *dissemination* of arrest records containing *nonconviction data to nonexempt public employers.* As the court explained: "[T]he dissemination to public employers of arrest records containing nonconviction data does not further law enforcement or criminal justice. It would therefore appear that this case falls within the third 'mischief' ("the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party") at which the amendment is directed. (*White* v. *Davis, supra,* 13 Cal.3d 757, 775.) That is, information regarding nonconviction data is properly used in law enforcement but such information may not be considered by public employers. The question remains whether this intrusion into the right of privacy is justified by a compelling state interest. (*Id.,* at p. 775.)" (*Central Valley I, supra,* 95 Cal.App.3d at p. 236.)

■ Thus, we take it as established that the official collection, retention, and dissemination of arrest records impinges upon the right to privacy guaranteed by article I, section 1 of the California Constitution. (*Loder* v. *Municipal Court, supra,* 17 Cal.3d at p. 868; *Central Valley I, supra,* 95 Cal.App.3d at pp. 237-238; see also *Pitman* v. *City of Oakland* (1988) 197 Cal.App.3d 1037, 1045-1046 [225 Cal.Rptr. 109].)

■ We also recognize that the California constitutional right of privacy created by the 1972 amendment to our state constitution is not absolute. (*Loder* v. *Municipal Court, supra,* 17 Cal.3d at p. 864; *Central Valley I, supra,* 95 Cal.App.3d at p. 237.) As observed by the California Supreme Court, " 'the amendment does not purport to prohibit all incursion into individual privacy but rather that any such intervention must be justified by a compelling interest.' " (*Loder* v. *Municipal Court, supra,* 17 Cal.3d at p. 864, quoting *White* v. *Davis, supra,* 13 Cal.3d 757.)

## C. *Compelling State Interest*

### 1. *Administrative burden is not sufficient.*

■ In the trial court proceeding that led to *Central Valley I,* defendants "contended that their policy served the compelling state interest of ' "the promotion of more efficient law enforcement" ' because it 'is clearly reasonable to assume that the efficient administration of the state criminal record information system would be hampered if each request from authorized officials or entities had to be screened to determine whether the information was sought for a purpose encompassed by Labor Code section 432.7(a) and if the dispositions appearing on the record had to be screened and edited before complying with the requests for records.' " (*Central Valley I, supra,*

95 Cal.App.3d at pp. 237-238.) The Court of Appeal rejected this asserted justification as in reality "an interest in the avoidance of administrative burden. It is now well settled that administrative burden does not constitute a compelling state interest which would justify the infringement of a fundamental right. [Citations.]" (*Id.,* at p. 238.) The Court of Appeal additionally concluded that administrative duties would be increased only by the necessary editing of arrest records to delete reference to nonconviction data. (*Id.,* at pp. 238-239.) The court acknowledged that at trial defendants could attempt to identify other compelling state interests supported by their dissemination policies. (*Id.,* at p. 237.)

2. *Other asserted compelling interests are not served by dissemination of nonconviction data to nonexempt employers and licensing entities.*

 Other assertedly compelling state interests referred to by defendants are not furthered by the policy of disseminating to nonexempt agencies and licensing authorities arrest records containing nonconviction information. The *Central Valley I* court rejected the asserted interest of promotion of informed and intelligent law enforcement, as it recognized that dissemination of arrest records containing nonconviction data to nonexempt employers "does not further law enforcement or criminal justice." (*Central Valley I, supra,* 95 Cal.App.3d at p. 236.)

Nor is the policy *necessary* to serve the asserted interest in assuring that public employers and licensing agencies have all relevant information necessary to evaluate a prospective employee. Certainly it is not obvious why nonexempt agencies and licensing entities require information that apparently does not pertain to a criminal conviction. It is defendants' burden to articulate a compelling state interest and to demonstrate that it is necessarily served by the policy. (*White* v. *Davis, supra,* 13 Cal.3d 757, 761; *City of Carmel-by-the-Sea* v. *Young* (1970) 2 Cal.3d 259, 268 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313].) Defendants have not sustained their burden. Rather than attempt to explain how their policy is essential to the advancement of a compelling state interest, defendants simply reiterate that the Department of Justice is merely a repository with no statutory duty to expurgate arrest records to delete information concerning arrests not resulting in convictions, arrests followed by successfully completed diversion, or even arrests followed by exoneration. Defendants further claim that, as a

repository, they have no duty to update records prior to dissemination to secure complete disposition information.[8]

Defendants may not skirt the issue in this fashion. First of all, defendants' insistence that they are only a repository for criminal records does not respond to the question whether the challenged use of the information they control is necessary to serve a compelling state interest. The Supreme Court in *Loder* recognized the potential for misuse of arrest records. "According to the extensive literature on the topic, the principal dangers are inaccurate or incomplete arrest records, dissemination of arrest records outside the criminal justice system, and reliance on such records as a basis for denying the former arrestee business or professional licensing, employment, or similar opportunities for personal advancement." (17 Cal.3d at p. 868, fn. omitted.) As a government agency in possession of sensitive information that may adversely affect individuals in many ways, defendants must exercise great care. For this reason, the Attorney General was made responsible for the security of criminal offender record information, and was directed to disseminate such information "only in situations in which it is demonstrably required for the performance of an agency's or official's functions." (Pen. Code, § 11077, subd. (b).)

The court below impliedly found that entities requesting arrest records for nonexempt employment and licensing purposes did not require nonconviction information. This finding, which defendants do not substantively contest, is fully consistent with the statutory prohibition on nonexempt employers from considering nonconviction information.[9]

---

[8] In support of their central thesis that the department's sole function is as a repository, defendants cite *Maurer* v. *Ind. and as Members of Los Angeles Cty.* (9th Cir. 1982) 691 F.2d 434. *Maurer* is clearly distinguishable. There, the Court of Appeals upheld dismissal of a prisoner's action seeking to force the FBI to expunge his arrest records. Although the appellate court noted that the FBI functioned only as a repository for information received from law enforcement agencies, the court grounded its determination on the FBI's *lack of authority* to expunge arrest records maintained by California authorities. (*Id.*, at p. 437.) Defendants here are the state authorities with the responsibility for compiling, maintaining, and distributing arrest records. They certainly have the authority to expunge entries where appropriate. Moreover, unlike the prisoner-plaintiff in *Maurer*, plaintiffs here do not seek to require defendants to expunge their arrest records, effectively preventing subsequent use for legitimate law enforcement purposes. Rather, plaintiffs seek to limit dissemination of their arrest records by defendants for employment and licensing purposes, where dissemination violates established constitutional rights.

[9] We do not here address whether the Legislature could draft a statute narrowly tailored to allow certain nonexempt employers with special needs access to specific nonconviction information deemed necessary to protect the public.

3. *No compelling state interest shown in dissemination of arrest records without disposition entries.*

██ The trial court also found that state constitutional privacy guaranties were violated by defendants' policies of disseminating to nonexempt employers and licensing entities information concerning arrests without supplying disposition information and disseminating pre-1962 juvenile arrests or detentions without dispositions. We agree. Not only do these policies fail to further a compelling state interest, but the dissemination of entries without dispositions promotes the use of incomplete and inaccurate information, contrary to the legislative interest in completeness. (*Loder, supra,* 17 Cal.3d at p. 869.)

4. *No compelling interest identified for masking practices.*

██ The trial court found a privacy violation in defendants' practice of masking information not permitted to be disseminated in a manner which shows the inquiring agency that material has been omitted. We agree. Defendants have failed to identify any compelling state interest served by this practice.

5. *Summary.*

Hence, we determine the California constitutional privacy guaranty of article I, section 1 is violated by the dissemination of nonconviction information to nonexempt employers and licensing agencies for employment, licensing and certification purposes; the dissemination to nonexempt employers and licensing agencies of information regarding arrests not followed by dispositions without confirming that charges are pending; the dissemination to employers and licensing agencies of pre-1962 juvenile arrests or detentions without disposition; and the practice of masking information so as to indicate to the inquiring agency that material has been omitted. We affirm the court's injunction of such policies and practices.

## II.

### Plaintiffs' Appeal

A. *Court's Findings Regarding Arrest Record Dissemination to Exempt Employers.*

Plaintiffs do *not* contend that defendants may be prohibited from disseminating *nonconviction information* to exempt employers (employers of peace

officers, the Department of Justice, or other criminal justice agencies as defined in § 13101 of the Pen. Code) or partially exempt employers (employers at health facilities as defined in Health & Saf. Code, § 1250).

They do, however, challenge the findings of the trial court allowing dissemination to *exempt* employers of arrest records without dispositions or containing less than complete information.[10]

Plaintiffs also challenge the court's finding upholding defendants' refusal to provide fee waiver forms to local police and sheriff departments for use by indigent persons seeking to review their own criminal records.

B. *Plaintiffs Have No Private Right of Action Under 42 U.S.C. Section 3789g(b).*

█ Although they argue at length that defendants' policies violate 42 United States Code section 3789g(b),[11] and regulations implementing that statute, it is clear plaintiffs have no private right of action under the federal statute. In *Polchowski* v. *Gorris* (7th Cir. 1983) 714 F.2d 749, the Seventh

[10]Specifically, plaintiffs challenge the finding of the court that "defendants' policy of disseminating, for exempt employment evaluation purposes, criminal records containing (1) information indicating the subject was arrested but not indicating the disposition for said arrest; (2) information indicating the subject was arrested and thereafter placed on diversion (see, e.g., Penal Code § 1000.5) but not indicating whether the diversion was successfully completed; (3) information indicating the subject was arrested or detained and thereafter released pursuant to Penal Code § 849 subdivision (b)(1) or Penal Code § 849.5 but not specifying the precise reason for said release (see Penal Code § 11115 subdivision (b)); (4) information indicating the subject was arrested or detained and thereafter released pursuant to Penal Code § 849 subdivision (b)(1)) due to the complainant's refusal to prosecute (see Penal Code § 11115 subdivision (b)); and (5) information indicating the subject was arrested and the charges against the subject were dismissed but not specifying the precise reason for the dismissal (see Penal Code § 13151.1), without determining the current disposition status or the complete disposition for the arrest or detention does not violate the equal protection, due process, or right of privacy guarantees of the California or federal Constitutions, 42 U.S.C. § 3789g, 28 C.F.R. § 20.1 *et seq.,* or California Penal Code §§ 849 subdivision (c), 1001.32, 11116.6."

[11]42 United States Code section 3789g(b) provides in relevant part: "All criminal history information collected, stored, or disseminated through support under this chapter shall contain, to the maximum extent feasible, disposition as well as arrest data where arrest data is included therein. The collection, storage, and dissemination of such information shall take place under procedures reasonably designed to insure that all such information is kept current therein; the Office of Justice Programs shall assure that the security and privacy of all information is adequately provided for and that information shall only be used for law enforcement and criminal justice and other lawful purposes. In addition, an individual who believes that criminal history information concerning him contained in an automated system is inaccurate, incomplete, or maintained in violation of this chapter, shall, upon satisfactory verification of his identity, be entitled to review such information and to obtain a copy of it for the purpose of challenge or correction."

Circuit held that "42 U.S.C. Sec. 3789g(b) does not create an enforceable right to prevent the disclosure of criminal history information." (*Id.*, at p. 751.) The court concluded that the subsection was essentially administrative in nature. That subdivision "requires only that the OJARS [Office of Justice Assistance Research and Statistics] implement a security policy to safeguard criminal history information and, thus, does not provide any specific protections to any group of individuals." (*Id.*, at p. 752.) Despite plaintiffs' attempt to parse subdivision (b) so as to limit the court's holding to only the second sentence of that provision the holding was not so limited. The court held, "an action under Sec. 1983 may not be maintained to remedy violations of 42 U.S.C. Sec. 3789g by state and local officials." (*Id.*, at p. 752, fn. omitted.) We therefore proceed to plaintiffs' constitutional claims.

C. *Dissemination to Exempt Employers of Incomplete Arrest and Detention Records Without Attempting to Obtain Complete Information is Not the Least Intrusive Means of Serving a Compelling State Interest and Therefore Violates California Privacy Rights.*

The trial court upheld defendants' policy of disseminating incomplete information regarding an arrest or detention to exempt criminal justice agencies for employment evaluation purposes. Thus, for example, the court permitted defendants to continue providing such agencies criminal records indicating that a person seeking employment as a peace officer was arrested or detained but not indicating a final disposition or, if the arrestee was diverted, without revealing whether diversion was successfully completed. In other words, the court held that defendants had no duty to try to ascertain the final disposition of an arrest or detention.

At one of several hearings held to clarify or modify the proposed statement of decision, the court explained that this determination was "not based upon any administrative burden but rather . . . upon the need of the exempt agency to have full and complete information." Thus, in the view of the trial court, there was a compelling state interest in providing exempt agencies all of the information defendants had regarding a particular individual even if such "full and complete" disclosure consisted of incomplete information.

The evaluation of individuals who seek employment with criminal justice agencies is, we agree, extraordinarily important. Peace officers, who wear a badge of authority and are empowered to carry and sometimes to use deadly weapons in the discharge of their public duties, represent the state in its most sensitive interface with its citizens. "Such officers are the guardians

of the peace and security of the community, and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are are faithful to the trust reposed in them." (*Christal* v. *Police Commission* (1939) 33 Cal.App.2d 564, 567 [92 P.2d 416].) The agencies that employ peace officers therefore have a special responsibility to thoroughly explore the background of applicants for that position and should not be deprived of any information necessary to make an informed and intelligent determination of the fitness of an applicant.

Presumably for this reason, the statutory prohibition on the use by an employer of the record of an arrest not resulting in a conviction or which was followed by referral to and participation in a diversion program (Lab. Code, § 432.7, subd. (a)), does not apply to the employers of peace officers. (§ 432.7, subd. (d).)[12] Indeed, plaintiffs concede that, as stated in *Central Valley I, supra,* 95 Cal.App.3d 212, 226, "arrest records containing nonconviction data may be legitimately considered by employers of peace officers . . . ."

For the foregoing reasons, we conclude there is a compelling state interest that criminal justice agencies obtain all information necessary to evaluate the fitness of persons seeking employment as peace officers. In reaching the conclusion that there is a compelling state interest in providing such agencies even incomplete information, the trial court must have assumed that the mere fact of an arrest or detention is invariably necessary to an informed and intelligent employment evaluation of a potential peace officer even if he was successfully diverted or exonerated. The difficulty with this assumption is that it conflicts with the earlier orders of Judges McKibben and Sutter, barring the use of the record of an arrest or detention if the arrestee successfully completed diversion or was subsequently exonerated. The trial court here purported not to alter these orders in any way and they remain in full force and effect. Moreover, by finding a compelling state interest in the disclosure of incomplete information the trial court has undermined the substantial governmental interest in insuring that criminal records disseminated by defendants are complete, an interest that the Legislature has been at great pains to promote. (*Loder* v. *Municipal Court, supra,* 17 Cal.3d 859, 869.)

As earlier described, in 1982 Judge McKibben found a violation of the state constitutional right of privacy in the dissemination to any agency for

---

[12] The Legislature has also partially exempted employers at health facilities, allowing them to receive information about specified types of arrests not followed by convictions for applicants for certain sensitive positions. (Lab. Code, § 432.7, subd. (e).)

employment or licensing purposes of the fact of an arrest followed by successful completion of diversion and enjoined the dissemination of such information without the consent of the arrestee. Two years later, Judge Sutter made a similar finding regarding an arrest or detention followed by complete exoneration. Defendants did not appeal these orders and have been complying with them for many years. In other words, as a result of the orders of Judges McKibben and Sutter, defendants have adopted the policy that it is unnecessary to inform an exempt agency that a candidate for employment as a peace officer was arrested or detained if the record shows that the arrest or detention was followed by the successful completion of diversion or by exoneration. This policy must be deemed to represent the Department's considered view that such information is not "demonstrably required for the performance of an agency's or official's functions." (Pen. Code, § 11077, subd. (b).) The department has thus adopted the position—contrary to that of the trial court—that the mere fact of an arrest or detention is not always essential in the evaluation of an individual's fitness to serve as a peace officer.

It is important to point out at this juncture that merely identifying a compelling state interest "does not complete the constitutional equation. ██ An impairment of an interest of constitutional dimension passes constitutional muster only if it is *necessary* to achieve the compelling interest. [Citations.] That means that the conflict between the competing values must be unavoidable, i.e., that it does not arise from the choice of means by which to secure the compelling interest. It can readily be seen that if the conflict is avoidable but is not avoided the real conflict is not between the compelling interest and the constitutional interest but between the *means* chosen to achieve the compelling interest and the constitutional interest." (*Wood* v. *Superior Court* (1985) 166 Cal.App.3d 1138, 1148 [212 Cal.Rptr. 811], italics in original.) ██ The conflict in this case between the compelling interest (that criminal justice agencies have as much relevant information as possible when evaluating the fitness of persons seeking employment as peace officers) and the constitutional interest (that unnecessary information that may infringe privacy rights not be disseminated to such agencies) can be diminished by requiring, to the maximum extent feasible, that the criminal offender record information defendants possess is complete, so that they can apply existing policies to determine whether particular information is necessary.

The trial court's implied finding that defendants have no duty to inquire as to the current status of an arrest or detention where no final disposition appears in the record would inevitably result in the provision to an exempt agency of information defendants could not disseminate if it had been com-

plete; that is, if an arrest or diversion was followed by successful diversion or by exoneration it could not be revealed to an exempt agency without violating the unappealed orders of Judges McKibben and Sutter, and, in cases of successful diversion, without also violating Penal Code section 1001.9.[13]

In *Loder* v. *Municipal Court, supra,* 17 Cal.3d 859, the Supreme Court permitted the limited retention and dissemination of arrest records for law enforcement purposes in reliance on the numerous steps taken by the Legislature "to insure that a record of arrest or detention be complete, i.e., that it also show the final disposition of the charge." (*Id.,* at p. 869.) The legislative intent to impose on defendants the primary responsibility to achieve this goal is reflected in the fact that the Attorney General, who is by statute required to prevent "unauthorized disclosures" of criminal offender record information, was specifically authorized to conduct "such inquiries and investigations as he finds appropriate to carry out [this] function[ ]." (Pen. Code, § 11079.) Placing this responsibility on defendants makes sense. Because the Department of Justice is the only statewide agency that collects, maintains and disseminates criminal offender records, and because it is in constant contact with the local agencies that are the source of the information, it is in the best position to insure that the information is complete before it is disseminated.

For the foregoing reasons, we conclude that plaintiffs' state constitutional right to privacy is violated when defendants disseminate to exempt agencies for employment purposes (1) information of an arrest for which diversion has been ordered without attempting to determine whether diversion has been successfully completed; (2) information of an arrest or detention followed by a dismissal or release without attempting to determine whether the individual was exonerated; and (3) information of an arrest without a disposition without attempting to determine whether diversion was successfully completed or the individual was exonerated. Disseminating the record of an arrest or detention without attempting to obtain the missing disposition information is not the least intrusive means of satisfying the compelling state interest in providing exempt agencies the information essential to assist them in making an informed and intelligent evaluation of applicants for peace officer positions.

We do not go so far as to hold, however, that defendants may never provide an exempt agency information of an arrest or detention unaccom-

---

[13] Penal Code section 1001.9 provides that an arrest followed by successful diversion "shall be deemed to have never occurred" and precludes use of the record of that arrest without the divertee's consent "in any way which could result in the denial of any employment, benefit, license, or certificate."

panied by the final disposition. Considering the extraordinary responsibilities our society places upon peace officers and the need to rigorously scrutinize persons who apply for such positions, we hold that incomplete information regarding an arrest or detention may be provided an exempt agency if defendants have first made a genuine effort to ascertain whether an arrest or detention was followed by successfully completed diversion or by exoneration. If this effort fails, and defendants are unable to obtain that information from local agencies, defendants may then disseminate to the exempt agency an incomplete record of an arrest or detention.

We understand that by authorizing the dissemination of incomplete information to exempt agencies in the circumstances just described we perpetuate the danger that defendants may disseminate information of an arrest or detention that would have been barred if it had been complete. We think it appropriate to do so not only because, as we have indicated, the state has a particular interest in the most rigorous scrutiny of the fitness of persons who seek to become peace officers (Lab. Code, § 432.7, subd. (d)) but also because we are convinced that the responsibility we impose on defendants will diminish the risk to privacy, that is, the risk that the record of an arrest or detention will be improperly disclosed because, unknown to the department, it was followed by the successful completion of diversion or by exoneration. We remain mindful, in this connection, that the right of privacy arising out of our state constitution is not absolute. (*Loder* v. *Municipal Court, supra,* 17 Cal.3d at p. 864; *White* v. *Davis, supra,* 13 Cal.3d 757, 775; *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 672 [114 Cal.Rptr. 345, 522 P.2d 1345].) The imposition on defendants of the duty to affirmatively seek missing information of a final disposition seems to us a sensible means of balancing the competing considerations this case presents.

### III.

### *Equal Protection*

Because we have determined that various dissemination policies of defendants violate plaintiffs' right to privacy under the California Constitution, it is unnecessary to address plaintiffs' equal protection claim.

### IV.

### *Refusal to Provide Local Agencies With Fee Waiver Forms Is Lawful*

The trial court found lawful defendants' policy of failing to provide fee waiver forms to local agencies for arrest record review purposes and

denied injunctive relief. Plaintiffs contend the policy violates Penal Code section 11122.

Under the statutory scheme for arrest record review (see Pen. Code, §§ 11120-11127), an individual wishing to review his arrest record must submit an application form to the Bureau of Criminal Identification accompanied by a fee of up to $25. The application requires fingerprints for which the fingerprinting agency may charge a reasonable fee. (Pen. Code, § 11122.) Penal Code section 11122 provides in relevant part: "Applications may be obtained from police departments, sheriff departments, or the Department of Justice." Penal Code section 11123 provides in relevant part: "Any request for waiver of fee shall accompany the original request for the record and shall include a claim and proof of indigency."

The bureau distributes the application form to local police and sheriff departments. Though the bureau has developed a fee waiver form it does not similarly distribute this form to local agencies. Rather, the application form has a clear statement that individuals who are unable to pay can claim indigence by requesting a fee waiver form from the bureau. A representative of the bureau explained this decision as follows: "We felt that if we included the [fee waiver] form with every application that everyone would claim they couldn't pay, and the support for that program would disappear."

Plaintiffs contend this policy violates Penal Code section 11122. Clearly it does not. That section arguably requires the bureau to make applications available at local law enforcement agencies. Penal Code section 11122 does not refer to supplemental forms that may be filed with the application. Nor does the section dealing with fee waiver forms indicate they must be distributed to local agencies in the first instance. (Pen. Code, § 11123.) We do not believe the bureau's determination to require the applicant to request such waiver form exceeds its discretion. The intent of the Legislature to afford persons an opportunity to obtain a copy of their arrest records is not frustrated by refusal to distribute the fee waiver forms with the applications. We are unwilling to gainsay the bureau's fear that provision of the form without request would encourage persons not truly indigent to seek waiver of the fee nonetheless. In other words, as the trial court concluded, the bureau could properly determine that persons who are truly indigent would be motivated to send for the fee waiver form, while those who could afford the fee would be less likely to do so.

. . . . . . . . . . . . . . . . . . .*

## CONCLUSION

The judgment is reversed insofar as it:

(1) Allows dissemination to exempt agencies of information concerning arrests or detentions followed by dismissal or releases where defendants have not sought to determine whether the dismissal or release was due to exoneration of the subject;

(2) Allows dissemination to exempt agencies of information concerning arrests followed by diversion without attempting to determine whether the diversion program has been successfully completed; and

(3) Allows dissemination to exempt agencies of information concerning an arrest without a final disposition for the arrest where defendants have not sought to determine whether the arrest resulted in the exoneration of the subject or the successful completion of a diversion program.

The judgment is modified to strike subparagraph (c) from paragraphs I, II, and III and to strike that overbroad language contained in paragraphs XI, XII, and XIII as to the lawfulness of statutory provisions for collection, mainenance and dissemination of arrest record information.

In all other respects, the judgment is affirmed.

Benson, J., and Peterson, J., concurred.

A petition for a rehearing was denied October 26, 1989, and the opinion was modified to read as printed above.

---

*See footnote, *ante,* page 145.