[Civ. No. 34818. First Dist., Div. One. Mar. 7, 1975.]

EVELLE J. YOUNGER, as Attorney General, etc., Plaintiff and Respondent, v.
BERKELEY CITY COUNCIL et al., Defendants and Appellants.

## COUNSEL

Donald P. McCullum, City Attorney, Michael Lawson, Deputy City Attorney, Susan Watkins and Kathryn L. Walt, Assistant Attorneys, and Charles O. Triebel, Jr., for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WEINBERGER, J.**\*—Respondent, as Attorney General of the State of California, filed a complaint for declaratory and injunctive relief to which appellants demurred and filed an answer. The Superior Court, in and for the County of Alameda, overruled the demurrer and, after a hearing, granted declaratory relief and issued a permanent injunction. This appeal is from the order and permanent injunction entered.

At issue is the validity of Resolution No. 45,653-N.S. (hereinafter "Resolution") of the Berkeley City Council which purports to establish a procedure under which citizens or residents of the City of Berkeley may obtain access to their state arrest records contained in the files of the Berkeley Police Department. The Resolution also purports to establish a procedure under which any Berkeley resident may challenge the accuracy of any entries on his state arrest records, whether or not such entries were based upon arrest data supplied by the Berkeley Police Department. In their demurrer appellants represented that they had interpreted the Resolution to permit challenges only to Berkeley Police Department entries, which representation was accepted by respondent, who also conceded that the City of Berkeley could permit whatever access the city council deemed appropriate to arrest records compiled by the Berkeley Police Department.

Under article XI, section 5, subdivision (a), of the California Constitution, a municipal government ". . . may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." Section 37100 of the Government Code provides that the legislative body of a municipality ". . . may pass ordinances not in conflict with the Constitution and laws of the State or United States." ▮ The question before the court is whether the Berkeley City Council acted in excess of its constitutional and statutory powers by adopting a resolution which purports to give persons with arrest records in the City of Berkeley access to California Bureau of Identification arrest record information which has been furnished to the Berkeley Police Department as provided in Penal Code section 11105, subdivision (b).

The applicable law has been well summarized in *City of Santa Clara v. Von Raesfeld* (1970) 3 Cal.3d 239, 245-246 [90 Cal.Rptr. 8, 474 P.2d 976],

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

as follows: "When it appears that a municipal regulation and a general state law are in conflict, the controlling law will depend on whether the subject matter is a municipal affair or whether it is of statewide concern. If the matter is a municipal affair, local ordinances and regulations will be upheld despite conflict with the general state laws if the city charter includes appropriate 'home rule' provisions. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61 [81 Cal.Rptr. 465, 460 P.2d 137].) 'As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation (the preemption doctrine).' (*Bishop* v. *City of San Jose, supra,* at pp. 61-62.)"

"Because the various sections of article XI fail to define municipal affairs, it becomes necessary for the courts to decide, under the facts of each case, whether the subject matter under discussion is of municipal or statewide concern. This question must be determined from the legislative purpose in each individual instance." (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158].)

██ Appellants assert that permitting a resident to look at his state criminal offender record in possession of the Berkeley Police Department is a municipal affair and that under the Charter of the City of Berkeley they have the authority to adopt the resolution in question. They argue that the maintenance by the Berkeley Police Department of accurate arrest records ". . . is necessary for the effective, responsive and responsible implementation of the powers and duties of the Chief of Police and other members of the Department," and that granting a person access to his record assists in the detection of erroneous data. They assert that ". . . the City of Berkeley has a responsibility to its citizens and other persons coming into contact with the Police to insure that inaccurate or incomplete and misleading information about them is not being stored or utilized by City departments."

Appellants' contention presupposes that the state's interest in its own records ceases when, pursuant to statute, criminal offender record information is transmitted to a local police agency. That state interest in such records continues may be inferred from Penal Code section 11079 which authorizes the Attorney General to investigate local police agencies and their practices concerning the storage and dissemination of criminal offender record information.

The Resolution goes beyond matters of municipal concern since it purports to provide access to, and to establish procedures for challenges of, Department of Justice criminal offender record information compiled by a state agency from both intrastate and interstate sources. With respect to state agencies, it is the agency itself which has the right to control access to its own records (see Gov. Code, § 6255). With regard to state criminal offender record information, not only has the Department of Justice itself been enjoined from disclosing it except where authorized by statute (Pen. Code, §§ 11076, 11081), but the Attorney General, who controls the department, has been specifically charged with responsibility for its security and directed to prevent its unauthorized disclosure. (Pen. Code, § 11077.)

"When there is a doubt as to whether an attempted regulation relates to a municipal or to a state matter, or if it be the mixed concern of both, the doubt must be resolved in favor of the legislative authority of the state [citations]." (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385].) ■ A local ordinance that deals with matters of statewide concern is void if it conflicts with general state law intended by the Legislature to occupy the field to the exclusion of municipal regulation. (See *Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 539-540 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036]; *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859 [76 Cal.Rptr. 642, 452 P.2d 930].)

■ Since control and dissemination of state criminal offender record information is of statewide concern and the state interest does not terminate upon furnishing such information to a local law enforcement agency for law enforcement purposes authorized by statute, the Resolution is not a matter purely of municipal concern and this court must look to the state statutory scheme to determine whether the Resolution deals with a subject that has been preempted by state law.

■ The Resolution conflicts with state law which provides that only those authorized by statute may obtain access to Department of Justice arrest records. (Pen. Code, §§ 11076, 11081.) Those who seek access to their own records must follow a specific procedure: (1) obtain a Department of Justice application form; (2) return the completed application together with a fee to the Department of Justice; and (3) examine the record in a Department of Justice facility, but without reproducing it. (Pen. Code, §§ 11122, 11123, 11124.) Under the Resolution the applicant: (a) does not use a Department of Justice application

form; (b) does not pay the statutory fee or any fee to the Department of Justice; and (c) examines the state record in the Berkeley Police Department. Though the Resolution does not so specify, according to the Berkeley Police Department the local applicant is not permitted to copy the state records shown him.

The Department of Justice not only has a statutory duty to transmit criminal offender record information to local police agencies but the local agency must certify that the records are sought for law enforcement purposes, not private ones. (Pen. Code, § 11105, subd. (b); see also Pen. Code, § 11077, subd. (b).) It is no answer to point out that when the request was made it was for law enforcement purposes, for when the Berkeley Police Department discloses the state record to the applicant it is for a private and not a public purpose. Clearly, the Resolution conflicts with state law.

█ Having concluded that providing access to Department of Justice arrest records is not exclusively a municipal affair and that the Resolution conflicts with state law, it is necessary to determine whether the Legislature has preempted the field. In this regard it is essential to review the whole purpose and scope of the legislative scheme. "The task is . . . to determine whether the state has occupied . . . an area of legislation which . . . is sufficiently logically related so that a court . . . can detect a patterned approach to the subject." (*Galvan* v. *Superior Court, supra,* 70 Cal.2d 851 at p. 862.) Such a "patterned approach" to the whole field becomes apparent from examination of the relevant statutes. Under the Penal Code, a state agency has been directed to collect, retain and disseminate arrest records (Pen. Code, §§ 11100-11105) compiled from sources within (Pen. Code, §§ 11101, 11107, 11112) and without (Pen. Code, § 11077) the state. A state officer (the Attorney General) has been instructed to provide personnel (Pen. Code, § 11006) to facilitate the task, and he is responsible for establishing a system of identifying criminals. (Pen. Code, § 11100.) Local police agencies are responsible for arrest information input (Pen. Code, § 11112); the Department of Justice is responsible for disseminating collated data to local authorities (Pen. Code, § 11105). The department is forbidden to disseminate the information except to agencies or persons authorized by law to receive it. (Pen. Code, §§ 11076, 11105; *Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 818 [112 Cal.Rptr. 257, 518 P.2d 1353].) The Attorney General is charged with responsibility for preventing unauthorized dissemination (Pen. Code, § 11077), and unauthorized persons are enjoined from receiving Department of Justice arrest record data (Pen. Code, § 11081). A specific,

detailed procedure is also established by which a citizen may obtain access to his own arrest record and challenge any entries thereon, the accuracy of which he questions (Pen. Code, §§ 11120-11126). Clearly, this constitutes a comprehensive legislative scheme or pattern of criminal record dissemination which preempts the field. (*Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d 674 at p. 687.)

■ To overcome the preemption doctrine appellants assert that Penal Code section 11080 permits access to state records where authorized by law, and that the type of access permitted under the Resolution is so authorized by the Public Records Act which establishes a general right of public access to governmental documents. (See Gov. Code, § 6250.) However, certain documents in the possession of a municipality are expressly exempt from disclosure and included in this category are ". . . records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any such investigatory or security files compiled by any other state or local agency for correctional, law enforcement or licensing purposes." (Gov. Code, § 6254, subd. (f).)

The restrictions upon release of such information are so carefully set out in the Penal Code sections 11076, 11081 and 11105 (see *Hill* v. *Superior Court, supra,* 10 Cal.3d 812, 818) that it is inconceivable that the general terms of the Public Records Act were intended to render them void.

In any event it is clear that sections 11120-11127 of the Penal Code are special legislation dealing with the access of private individuals to their state arrest records and these sections take precedence over any general legislation such as the Public Records Act. " 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' " (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593], quoted with approval in *People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580].)

Ordinarily all criminal offender record information, including that compiled by the Berkeley Police Department, is confidential and not "public" or subject to disclosure. (Gov. Code, § 6254, subd. (f); *People* v. *Wilkins* (1955) 135 Cal.App.2d 371, 377 [287 P.2d 555].) While the Attorney General conceded in this case that the City of Berkeley could

permit whatever access the city council deemed appropriate in the case of arrest records compiled by the Berkeley Police Department, the same does not apply to records compiled by the State Department of Justice, particularly where Penal Code sections 11077 and 11079 contemplate a continuing state interest in those records.

Appellants contend that Government Code section 6254, subdivision (f), does not exempt from disclosure one's state criminal record and rely upon *Uribe* v. *Howie* (1971) 19 Cal.App.3d 194 [96 Cal.Rptr. 493], to support their contention. In *Uribe* the petitioner sought to compel disclosure of reports of a pest control operator in the possession of a county agricultural commission who claimed the reports had been compiled for correctional law enforcement or licensing purposes. The court held that Government Code section 6254, subdivision (f), did not apply and commented on page 213: "To say that the exemption created by subdivision (f) is applicable to any document which a public agency might, under any circumstances, use in the course of a disciplinary proceeding would be to create a virtual *carte blanche* for the denial of public access to public records. The exception would thus swallow the rule. This could not have been the intent of the Legislature."

*Uribe* dealt with a routine report in a public file. It could gain exemption not because of its content but only when and if it became a part of an investigatory file. Here, by their very content, the criminal records compiled by the State Department of Justice are independently entitled to exemption. (See *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 654 [117 Cal.Rptr. 106].)

It is concluded that the Public Records Act does not authorize local entities to permit access to state criminal offender records to anyone ". . . for the purpose of assisting a private citizen in carrying on his personal interests . . ." (Pen. Code, § 11105, subd. (b)) or to insure the accuracy of such records.

The order and permanent injunction appealed from are affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied March 27, 1975, and appellants' petition for a hearing by the Supreme Court was denied May 1, 1975.