[No. C007332. Third Dist. Aug. 23, 1990.]

HOUSING AUTHORITY OF THE COUNTY OF SACRAMENTO et al., Plaintiffs and Respondents, v.
JOHN K. VAN DE KAMP, as Attorney General, etc., Defendant and Appellant.

---

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Richard M. Frank and Shelley Mydans, Deputy Attorneys General, for Defendant and Appellant.

Brenton A. Bleier for Plaintiffs and Respondents.

---

**OPINION**

**PUGLIA, P. J.**—On the petition of the Housing Authority of the County of Sacramento and the Housing Authority of the City of Sacramento (plaintiffs), the superior court issued a writ of mandate directing the Attorney General to furnish plaintiffs the criminal records of applicants for public housing. The trial court granted the writ on the basis that the release of such records to plaintiffs for their use in "certifying" applicants as eligible for public housing is required by Penal Code section 11105, subdivision (b)(10). (Hereafter all statutory references to sections of an undesignated code are to the Penal Code.)

On appeal, the Attorney General argues that section 11105, subdivison (b)(10), which allows local governmental entities access to criminal records "in fulfilling employment, certification or licensing duties," refers solely to occupational certification and licensing functions. Because plaintiffs seek the information for a purpose other than occupational certification or licensing, the Attorney General argues he is not statutorily authorized to disclose such information. The Attorney General's interpretation of the statute is correct. Accordingly, we shall reverse the judgment.

The facts are not in dispute. In 1987, plaintiffs requested that the Attorney General furnish them with the criminal records of present and prospective public housing tenants. The Attorney General denied the request, asserting that pursuant to section 11105, subdivision (b)(10), local governmental entities such as plaintiffs were authorized access to criminal records only for "employment, certification and licensing" functions.

Thereafter, plaintiffs amended their tenant selection procedures to require that prospective public housing tenants be issued a "certificate of housing eligibility." As plaintiffs describe the amended procedures, they "provide for the issuance of a certificate of eligibility to qualified public housing applicants." Concurrently, plaintiffs amended their policies to render ineligible for public housing those applicants convicted of serious offenses such as crimes of violence and "other criminal acts which would adversely affect the health, safety or welfare of other tenants."

Plaintiffs again requested from the Attorney General the criminal history information of those applying for and presently residing in public housing. The Attorney General again denied the request, asserting "certification" as used in section 11105, subdivision (b)(10) refers to occupational certification and that release of such information for purposes other than those set forth in the statute is not authorized. (See § 11077.)

Plaintiffs sought a writ of mandate in the superior court, claiming section 11105, subdivision (b)(10) authorized them to receive criminal history information concerning applicants for public housing. The trial court concurred with plaintiffs and issued the writ.

The Legislature has set up an elaborate system for the maintenance and dissemination of criminal history information. (§ 11006 et seq.) Section 11105, subdivision (a)(1) requires the Department of Justice to maintain "state summary criminal history information," which is defined as the master record of information compiled by the Attorney General "pertaining to the identification and criminal history of any person." The information shall include "date of arrests, arresting agencies and booking numbers, charges, dispositions and similar data about such person." (§ 11105, subd. (a)(2)(i).)

■ The dissemination of criminal history information significantly affects an individual's right to privacy as guaranteed by article I, section 1 of the California Constitution. (*Central Valley Ch. 7th Step Foundation, Inc.* v. *Younger* (1989) 214 Cal.App.3d 145, 151-152 and fn. 3 [262 Cal.Rptr. 496].) Accordingly, the Legislature has narrowly defined the instances in which such information may be disseminated (see *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 872-873 [132 Cal.Rptr. 464, 553 P.2d 624]) and has established criminal sanctions for its unauthorized dissemination. Section 11076 declares: "Criminal offender record information shall be disseminated, whether directly or through any intermediary, only to such agencies as are, or may subsequently be, authorized access to such records by statute." Moreover, it is a misdemeanor for any employee of the Department of Justice (§ 11141) or "[a]ny person authorized by law to receive a record" or

information therefrom (§ 11142) knowingly to furnish that record or information to an unauthorized person. (See *Loder, supra,* at pp. 872-873.)

Section 11105 specifies two categories of agencies and persons authorized by law to receive criminal history information compiled by the Attorney General. "The first category is comprised of agencies and persons to whom the Attorney General is required to furnish this information 'when needed in the course of their duties.' (§ 11105, subd. (b).) It includes the courts, certain classes of peace officers performing traditional law enforcement functions, district attorneys, probation and parole officers, defense attorneys when so authorized, and state or local agencies or officers in strictly limited circumstances. The second category is composed of other agencies or officers to whom the Attorney General 'may' furnish this information, but he is permitted to do so only 'upon a showing of a compelling need.' (Subd. (c).)" (Fns. omitted; *Loder* v. *Municipal Court, supra*, 17 Cal.3d 872-873.)

■ With the foregoing in mind, we turn to the present controversy. Pursuant to subdivision (b)(10) of section 11105, the Attorney General is required to furnish state summary criminal history information to any city, county, or district when: (1) such record is needed to assist "in fulfilling employment, certification or licensing duties"; (2) access to such record is authorized by resolution of a local governing board; and (3) the information is required to implement a statute or regulation which expressly refers to specific criminal conduct of the subject of the record and contains requirements or exclusions or both that are expressly based on such conduct. (See *Loder* v. *Municipal Court, supra*, 17 Cal.3d at p. 873, fn. 15.)

Local housing authorities such as plaintiffs are districts within the meaning of section 11105, subdivision (b)(10). (64 Ops.Cal.Atty.Gen. 678, 683 (1981).)

At issue here is the construction to be given the word "certification" as it appears in section 11105, subdivision (b)(10). Plaintiffs argue the statute should be construed in accordance with its "plain meaning," and as the section places no express limitation on the specific employment, certification or licensing duties to which it refers, plaintiffs suggest that in any instance where a city, county or district is required by statute or ordinance to license or certify any act, activity or status, access to criminal records is warranted.

The Attorney General notes that "certify," the root word of "certification," has at least two distinct meanings: first, to declare something as true or accurate; second, to issue a certificate or license, such as a document certifying that one has met specified requirements, as for teaching. (See Webster's New Internat. Dict. (3d ed. 1971) p. 367.)

The Attorney General argues the meaning of "certification" as used in section 11105 is discernable from its juxtapositional context in relation to "employment" and "licensing" both of which also modify the word "duties." (Ballantine's Law Dict. (3d ed. 1969) p. 384; see *Fox* v. *Hale & Norcross S. M. Co.* (1895) 108 Cal. 369, 426 [41 P. 308]; *People* v. *Stout* (1971) 18 Cal.App.3d 172, 177 [95 Cal.Rptr. 593].) "Employment" is unambiguous and speaks for itself. "License evaluation encompasses evaluations for any license, certificate, registration or other means to engage in a business or profession regulated by the Business and Professions Code . . . . It also includes licensure and certification pursuant to specified local ordinances." (*Central Valley Ch. 7th Step Foundation, Inc.* v. *Younger, supra,* 214 Cal.App.3d at p. 154, fn. 4.) "Employment" and "licensing" as used in section 11105, subdivision (b)(10) thus refer to occupational activities. No plausible reason has been suggested why "certification" should be construed differently.

Plaintiffs' reliance on the "plain meaning" rule does not assist them. ■ "[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]" (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ The phrase "in fulfilling employment, certification, or licensing duties" appears twice in subdivision (b) of section 11105.[1] The first paragraph of subdivision (b) contains a proviso that "the provisions of Chapter

---

[1] Subdivision (b) of section 11105 states in pertinent part: "The Attorney General shall furnish state summary criminal history information to any of the following, when needed in the course of their duties, provided that when information is furnished to assist an agency, officer, or official of state or local government, a public utility, or any entity, *in fulfilling employment, certification, or licensing duties,* the provisions of Chapter 1321 of the Statutes of 1974 and of Section 432.7 of the Labor Code shall apply: . . . . [¶] (10) Any city or county, or city and county, or district, or any officer, or official thereof, when access is needed in order to assist such agency, officer, or official *in fulfilling employment, certification, or licensing duties,* and when such access is specifically authorized by the city council, board of supervisors or governing board of the city, county, or district when such criminal history information is required to implement a statute, ordinance, or regulation that expressly refers to specific criminal conduct applicable to the subject person of the state's summary criminal history information, and contains requirements or exclusions, or both, expressly based upon such specified criminal conduct." (Italics added.)

1321 of the Statutes of 1974 and of section 432.7 of the Labor Code shall apply" when state summary criminal information is furnished to assist an agency, officer or official of state or local government "in fulfilling employment, certification, or licensing duties." The identical phrase, "in fulfilling employment, certification, or licensing duties," is repeated in subsection (10) of subdivision (b) which specifically directs that criminal history information be furnished by the Attorney General to local governmental entities under specified conditions.

Use of the identical phrase twice in the same subdivision conveys the identical meaning. Significantly, the opening paragraph of subdivision (b) expressly limits criminal history information acquired "in fulfilling employment, certification, or licensing duties" to uses consistent with the provisions of law governing the denial, suspension and revocation of business and professional licenses (Stats. 1974, ch. 1321, pp. 2874-2876, §§ 1-15; see generally Bus. & Prof. Code, §§ 475-491) and regulating inquiries by employers into an employee's arrest record. (Lab. Code, § 432.7.) Chapter 1321 of the Statutes of 1974 substantially rewrote the laws governing denial, suspension and revocation of business and professional licenses, prohibiting the prior practice "whereby state and local agencies denied or revoked a business or professional license on the ground that a record of arrest or conviction demonstrated a lack of 'good moral character.' " (*Loder* v. *Municipal Court, supra*, 17 Cal.3d at p. 874; see Bus. & Prof. Code, div. 1.5, § 475 et seq.) Labor Code section 432.7 extends the prohibition against inquiry into a prospective employee's arrest record "from the field of public licensing to the even wider field of public *and private* employment." (Italics in original; *Loder, supra*, at p. 875.) The intent of Labor Code section 432.7 "is to prevent the adverse impact on employment opportunities of information concerning arrests where culpability cannot be proved." (*Pitman* v. *City of Oakland* (1988) 197 Cal.App.3d 1037, 1044 [243 Cal.Rptr. 306].)

Given the context of the opening paragraph of subdivision (b) of section 11105, in which the words "employment, certification, or licensing" are expressly qualified by other provisions of law relating to occupational licensing and employment, those words were clearly intended to refer to occupational and employment functions. No other intention appearing, the identical words as used in subsection (10) of subdivision (b) convey precisely the same meaning.

We note that section 11105.2 also uses the phrase "in fulfilling employment, licensing, or certification duties." Subdivision (a) of section 11105.2 provides "The Department of Justice may provide subsequent arrest notification to any agency authorized by Section 11105 to receive state summary criminal history information to assist in fulfilling employment,

licensing, or certification duties upon the arrest of any person whose finger-prints are maintained on file at the Department of Justice as the result of an application for licensing, employment, or certification." Subdivision (c) of section 11105.2 provides: "Any agency which submits the fingerprints of applicants for licensing, employment, or certification to the Department of Justice for the purpose of establishing a record of the applicant to receive notification of subsequent arrests shall immediately notify the department *when the employment of the applicant is terminated, when the applicant's license or certificate is revoked, or when the applicant may no longer renew or reinstate the license or certificate. . . .*" (Italics added.)

The parallel references in section 11105.2, subdivision (c) to revocation, renewal, or reinstatement of a license or certificate and the termination of employment suggest again that the terms "licensing" and "certification" as used therein refer to occupational licensing and certification.

■ Words or phrases common to two statutes dealing with the same subject matter must be construed in pari materia to have the same meaning. (*Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590-591 [116 Cal.Rptr. 376, 526 P.2d 528].) ■ The word "certification" as used in sections 11105 and 11105.2 refers to occupational certification. Thus the dissemination of criminal history records authorized by section 11105, subdivision (b)(10) is limited to the context of employment and occupation-al certification and licensing. A certificate of tenant eligibility issued by the local housing authority is not such a "certification."

■ In so concluding, we are mindful that under the statutory scheme set forth by the Legislature, nondisclosure of criminal records is the general rule. (*Younger* v. *Berkeley City Council* (1975) 45 Cal.App.3d 825, 832 [119 Cal.Rptr. 830].) While the Legislature has set forth the exceptions to the general rule in section 11105, subdivisions (b) and (c), those exceptions are to be narrowly construed. (45 Cal.App.3d at p. 832.) Because these records contain extremely sensitive and private information, all doubts are resolved against disclosure. (See 36 Ops.Cal.Atty.Gen. 1, 3 (1960).)

■ Against this backdrop, plaintiffs, upon being denied access to crim-inal records for the purpose of screening applicants for low-income housing, passed a series of resolutions in an attempt to bring the screening process within the reach of section 11105, subdivision (b)(10). These resolutions authorized access to criminal records, designated criminal convictions as disqualifying criteria for tenant eligibility and labeled the eligibility decision a "certification."

The scheme for the dissemination of criminal records is a matter of statewide importance. (*Younger* v. *Berkeley City Council, supra*, 45

Cal.App.3d at p. 830.) The Legislature has preempted the field to preclude local regulation. (*Id.* at p. 832.) Although section 11105, subdivision (b)(10) contemplates that local governmental entities can by ordinance or regulation authorize access to criminal history information, such access must be consistent with the statutory scheme which provides only narrow exceptions to the general rule prohibiting disclosure. The Legislature did not intend to confer carte blanche on local governmental entities to expand access to such information by an enactment characterizing any sort of governmental activity or process as a "certification." (See *Loder* v. *Municipal Court, supra,* 17 Cal.3d at pp. 872-873 [Section 11105, subdivision (b)(10) authorizes local agencies access to criminal history information "in strictly limited circumstances."].)

In construing a statute the ultimate goal is to effectuate legislative intent. (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859].) The legislative intent of section 11105, subdivision (b)(10) is to permit local governmental entities access to criminal records for the limited purpose of fulfilling their duties with respect to employment and occupational certification or licensing. While plaintiffs may in fact have a legitimate need for criminal history information of prospective tenants in public housing, their recourse is to request the Legislature to amend the statute to authorize the release of such information for that purpose.

The judgment is reversed. The matter is remanded to the trial court with directions to enter judgment for defendant.

Sparks, J., and DeCristoforo, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 15, 1990.