[No. B068360. Second Dist., Div. Four. July 29, 1994.]

ROBERT WESTBROOK, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

**COUNSEL**

De Witt W. Clinton, County Counsel, and J. Patrick Joyce, Principal Deputy County Counsel, for Defendants and Appellants.

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Paul M. Morley, Deputy District Attorneys, as Amici Curiae on behalf of Defendants and Appellants.

Washor & Associates, Lawrence I. Washor and Laura A. Weseley for Plaintiff and Respondent.

## OPINION

**WOODS (A. M.), P. J.**—The issue presented in this case is whether a private entity in the business of selling criminal background information to the public is entitled to obtain a compilation of data from a data base maintained by the Municipal Courts of Los Angeles County, including the name, birth date and zip code of every person against whom criminal charges are pending in those courts, together with the case number, date of offense, charges filed, pending court dates, and disposition.

For reasons explained more fully in this opinion, we conclude such information is protected from dissemination except as authorized by Penal Code sections 13200 through 13300, inclusive, and that respondent Robert Westbrook, doing business as Crimeline, has not proven facts entitling him to disclosure of the information pursuant to Penal Code section 13300. Therefore, we reverse the judgment allowing respondent to buy monthly copies of such information on computer tape from appellants Los Angeles County Municipal Courts.

I

Respondent sued appellants alleging that they had refused to sell him computer tapes containing copies of the Municipal Court Information System (hereafter MCI) in violation of their duty to provide the public with meaningful access to public records. Respondent requested the superior court to declare that he was entitled to access to MCI and to order appellants to provide him with periodic copies of MCI.

Appellants conceded that respondent was entitled to "copies of computer tapes that generate any facts and factors that are required to be kept by the clerk of the court by Penal Code Section 1428, specifically the defendant's name, charges (including date of offense), case number and disposition (including pending court dates)."[1] They contended, however, that respondent was not entitled to any other information. Respondent requested that he also be given each defendant's date of birth and zip code. Respondent testified that he receives computerized docket information from other courts. He also testified that if he were denied copies of appellants' tapes, he would have to travel to the 46 municipal court locations in the county to obtain the

---

[1]As we shall explain, this concession was not legally sound.

information. As a result, no one would be able to afford what he would have to charge them for the information.

The evidence showed that MCI contains "a wealth of additional information gathered from the individual criminal files, including information from booking slips, arrest reports, and other materials that are filed in each criminal case" including, "name, aliases, monikers, address, race, sex, date of birth, place of birth, height, weight, hair color, eye color, CII number, FBI number, social security number, California operating license number, arresting agency, booking number, date of arrest, offenses charged, police disposition, county and court name, date complaint filed, original charges and disposition." This information goes far beyond that which would routinely be found in a minute order, court file or the public index of criminal cases required by Government Code section 71280.3 or 69842.

The trial court expressed concern over the loss of privacy which would result from giving private companies access to this information, but found appellants' position (agreeing that respondent could have some information on computer tape and other information only by traveling to each individual court to obtain it) nonsensical. After taking the matter under submission, the trial court ruled that respondent was entitled to copies of the entire MCI on computer tape not more than one time per month upon payment of a reasonable amount for each such copy.

Appellants contend the judgment must be reversed because it violates the state constitutional right of privacy and Penal Code section 13300. Amicus curiae, the Appellate Committee of the California District Attorneys Association, joins in these contentions. Appellants also contend the judgment must be reversed because it exceeds the relief sought by respondent.

## II

In 1973, the Legislature, recognizing that criminal justice agencies required "greatly improved aggregate information for the performance of their duties" (Pen. Code, § 13100, subd. (b)), enacted legislation designed to make "the recording, reporting, storage, analysis, and dissemination of criminal offender record information . . . more uniform and efficient, and better controlled and coordinated." (Pen. Code, § 13100, subd. (e).)

The statutory scheme applies to criminal justice agencies at all levels of state government which perform, as their principal function, activities which relate to "the apprehension, prosecution, adjudication, incarceration, or correction of criminal offenders" or "the collection, storage, dissemination or

usage of criminal offender record information." (Pen. Code, § 13101.) Agencies falling within this definition are required to record "criminal offender record information"[2] in a form authorized by statute (Pen. Code, § 13125), and trial courts are required to report to the state Department of Justice (Pen. Code, §§ 13150, 13151) the outcome of most criminal cases. (Pen. Code, §§ 13150, 13151.)[3]

Dissemination of the information in the hands of local criminal justice agencies is controlled by Penal Code sections 13200 through 13326, inclusive. Dissemination of the information collected from the various state criminal justice agencies by the Department of Justice is controlled by parallel controls set forth in Penal Code section 11105.

Penal Code section 13300 sets forth significant restrictions on access to " '[l]ocal summary criminal history information' " which it defines as "the master record of information compiled by any local criminal justice agency . . . pertaining to the identification and criminal history of any person, such as name, date of birth, physical description, dates of arrests, arresting agencies and booking numbers, charges, dispositions, and similar data about the person." (Pen. Code, § 13300, subd. (a)(1).) Certain persons, agencies and entities are entitled to receive the information if it is "needed in the course of their duties" (Pen. Code, § 13300, subd. (b)),[4] but others may obtain the information only "upon a showing of a compelling need" and subject to Labor Code section 432.7 (which prohibits an employer from asking or obtaining information about an arrest which resulted in acquittal or

---

[2]The statutory definition of such information includes, inter alia, personal identification; the fact, date, and arrest charge; whether the defendant was released; the fact, date and results of pretrial proceedings; the fact, date and results of any trial or proceeding; the fact, date and results of any review of the trial court proceeding; facts relating to any confinement, release proceedings, pardon or clemency, termination of the criminal justice process as to the charge or conviction; and facts concerning probation or parole revocation proceedings. (Pen. Code, § 13102.)

[3]Information relating to arrests for violation of Penal Code section 647, subdivision (f) need not be reported without "special individual justification." (Pen. Code, § 13153.)

[4]Those falling within this category include: courts; peace officers (as defined in various sections of the Penal Code); district attorneys, prosecuting city attorneys, probation officers and parole officers; attorneys representing persons charged with a crime; state agencies when the information is required to implement a law which expressly requires or excludes specific criminal conduct; city and county officials when the information is needed to assist in fulfilling employment, certification or licensing duties; the person who is the subject of the information; any person or entity when access to the information is expressly authorized by statute and the information is required to implement a law which expressly requires and/or excludes specific criminal conduct; and the managing or supervising correctional officer of a county jail or correctional facility. (Pen. Code, § 13300, subd. (b)(1)-(13), inclusive.)

diversion except in specified instances). (Pen. Code, § 13300, subd. (c).)[5] The statutory restrictions on dissemination of the information do not affect any right of access to *individual* criminal offender record information authorized by any other law. (Pen. Code, § 13200.) In every other respect, however, access to the information is restricted unless otherwise allowed by law. (Pen. Code, § 13201.)

Despite these controls, respondent has, by virtue of the judgment in this case, been allowed to obtain monthly copies of computer tapes containing *all* criminal offender record information generated by the municipal courts of Los Angeles County, not because he has demonstrated any legally acceptable need to know the information, but solely because he wants to sell the information to others. As a result, respondent has in his possession information from which he can, over the years, compile his own private data base of criminal offender record information.

 Respondent defends the trial court's ruling, arguing that the tapes are public records which must be available to the public, despite possible misuse of the data by others. All of the authorities cited by respondent in support of this assertion contain general language to the effect that in the absence of a contrary statute or a countervailing public policy, court records are public documents which must remain available for public inspection. None, however, is controlling,[6] because this case involves a contrary statute and a countervailing public policy. The contrary statute is

[5]Those falling within this category include: a public utility which operates a nuclear energy facility to assist in employing persons to work at the facility; state peace officers not included in subdivision (b); peace officers of other countries; public officers of the United States, other states or possessions or territories of the United States to the extent that federal law authorizes access to such records and the information is necessary for the performance of official duties; any person to whom a probation, parole or peace officer requests disclosure with the consent of the subject for the purpose of the subject's rehabilitation; federal courts; federal peace officers; the person who is the subject of the record when the information is needed to apply for entry into the United States or any foreign nation; and a public utility when the information is needed to assist in employing persons who will be seeking entrance to private residences in the course of their employment (in which case the information is limited to convictions and any arrest for which the person is released from custody pending trial). (Pen. Code, § 13300, subds. (c)(1)-(g), inclusive.)

[6]*Estate of Hearst* (1977) 67 Cal.App.3d 777, 782-785 [136 Cal.Rptr. 821], discussed the sealing of a single probate file, and the reviewing court concluded that portions of the file could be sealed for as long as the beneficiaries could demonstrate a clear and present danger of attack; *Pantos* v. *City and County of San Francisco* (1984) 151 Cal.App.3d 258, 261, 265 [198 Cal.Rptr. 489], affirmed the trial court's denial of a request for access to juror questionnaires made by a commercial jury investigation service which provided background information on prospective jurors to paying clients; *Mary R.* v. *B. & R. Corp.* (1983) 149 Cal.App.3d 308, 317-318 [196 Cal.Rptr. 871], involved a single medical malpractice file which the reviewing court held could not be permanently sealed in light of the public interest in investigating and regulating complaints of a physician's misconduct; *Craemer* v. *Superior*

Penal Code section 13300, and the countervailing public policy is the state constitutional right to privacy.

 In an effort to avoid this conclusion respondent contends Penal Code section 13300 has no application because MCI does not contain criminal histories and because it does not include all of the information specified in Penal Code section 13125. Neither of these arguments is persuasive.

The protections of Penal Code section 13300 apply to the master record of "criminal offender record information," as that term is defined in Penal Code section 13102 (see fn. 2, *ante*), including the defendant's name, date of birth, physical description, dates of arrests, arresting agencies, booking numbers, charges, dispositions, "and similar data about the person." (Pen. Code, § 13300, subd. (a)(1).) The information included in the MCI system, which the county referred to in oral argument as an "electronic rap sheet," falls squarely within the statutory definition. The fact that it may not include every item mentioned in section 13125 is irrelevant; that section does not define criminal offender record information, but simply decrees the form in which such information is to be recorded. Similarly, the fact that respondent sought less than all of the information available from MCI does not exempt his request from the controls of the statute. Since the MCI system constitutes a master record of compiled information within the meaning of Penal Code section 13300, it must not be disseminated except as provided by that statute.

 The language of Penal Code section 13300 et seq., demonstrates that the Legislature intended nondisclosure of criminal offender record information to be the general rule. (Pen. Code, § 13200; see also *Housing Authority v. Van de Kamp* (1990) 223 Cal.App.3d 109, 116 [272 Cal.Rptr. 584] [interpreting similar restrictions on dissemination of criminal records pursuant to Penal Code section 11105]; *Younger v. Berkeley City Council* (1975) 45 Cal.App.3d 825, 830 [119 Cal.Rptr. 830] [concluding that the Public Records Act does not authorize access to state criminal offender records for the purpose of assisting a private citizen in carrying out his personal interests].) It follows that respondent should have been required to prove that he was a person or entity specifically entitled by law to have access to the information contained in MCI. Respondent was spared this burden of proof by appellants' stipulation that he was entitled to obtain, in computer tape form, docket information, including defendants' names, charges (including

*Court* (1968) 265 Cal.App.2d 216, 227 [71 Cal.Rptr. 193], held that a trial court could properly order all grand jury transcripts not to be disclosed for a reasonable period of time after delivery to the defendant, and that this period could be extended as to a specific defendant upon sufficient showing of potential prejudice.

the dates of the offenses), case numbers and disposition information including pending court dates. Amicus curiae urges that the stipulation was legally improper. Although the reasoning in support of appellants' stipulation is not a matter of record, it appears to have been based upon an opinion of the county counsel to the effect that such information falls within the exception of Penal Code section 13305, subdivision (c). That section provides that it is not a violation of the statutory provisions relating to local summary criminal history information to "include information obtained from a record in (1) a transcript or record of a judicial or administrative proceeding or (2) any other public record when the inclusion of the information in the public record is authorized by a court, statute, or decisional law." County counsel apparently reasoned that since Penal Code section 1428 requires municipal courts to keep a docket of their criminal cases,[7] the docket is a public record within the meaning of Penal Code section 13305, subdivision (c)(2).

This circular reasoning is faulty. An interpretation of Penal Code section 13300 making it inapplicable to docket information generated or maintained in a computer data base, would be incongruent with the legislative intent that the statutory scheme apply, inter alia, to criminal justice agencies which perform as their principal function activities relating to the adjudication of criminal offenders. (Pen. Code, § 13101.) Therefore, the term "any other public record" must be read in the context of Penal Code section 13305, subdivision (c)(2), to exclude a record from which local summary criminal history information is generated.

There is a qualitative difference between obtaining information from a specific docket or on a specified individual, and obtaining docket information on every person against whom criminal charges are pending in the municipal court. If the information were not compiled in MCI, respondent would have no pecuniary motive (and presumably no interest) in obtaining it. It is the aggregate nature of the information which makes it valuable to respondent; it is that same quality which makes its dissemination constitutionally dangerous. In apparent recognition of this fact, county counsel now joins amicus curiae in urging that the stipulation was improvident.

■ The state constitutional right of privacy extends to protect defendants from unauthorized disclosure of criminal history records. (*Craig* v.

---

[7]Penal Code section 1428 provides: "A docket must be kept by the judge or clerk of each justice court and by the clerk of each municipal court having jurisdiction of criminal actions or proceedings, in which must be entered the title of each criminal action or proceeding and under each title all the orders and proceedings in such action or proceeding. Wherever by any other section of this code made applicable to such courts an entry of any judgment, order or other proceeding in the minutes is required, an entry thereof in the docket shall be made and shall be deemed a sufficient entry in the minutes for all purposes."

*Municipal Court* (1979) 100 Cal.App.3d 69, 76-77 [161 Cal.Rptr. 19].) These records are compiled without the consent of the subjects and disseminated without their knowledge. Therefore, appellants, as custodians of the records, have a duty to "resist attempts at unauthorized disclosure and the person who is the subject of the record is entitled to expect that his right will be thus asserted." (*Id.* at p. 77.)

Respondent counters that there is a compelling interest in protecting the public's right to know what goes on in the California court system. While there is no question that court proceedings generally should not be conducted in secrecy, the public's right to information of record is not absolute. Where that right conflicts with the right of privacy, the justification supporting the requested disclosure must be balanced against the risk of harm posed by disclosure. (See, e.g., *Estate of Hearst, supra,* 67 Cal.App.3d at p. 785.)[8]

The United States Supreme Court has concluded that a third party's request for law enforcement records of a private citizen "can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'" (*U.S. Dept. of Justice* v. *Reporters Committee* (1989) 489 U.S. 749, 780 [103 L.Ed.2d 774, 800, 109 S.Ct. 1468].) The case in which this conclusion was reached is distinguishable from the one before us in several respects, including the fact that the information sought in that case was the rap sheets of four persons believed to be connected with organized crime, and the case was decided under the federal Privacy Act of 1974 (5 U.S.C. § 552a) rather than a specifically controlling statute. The rationale of the case is persuasive, nonetheless, and provides additional support for our conclusion that the judgment in this case should be reversed.

If entities such as respondent are provided with periodic copies of MCI, or any part thereof which includes the identity of the defendant and the charges filed against the defendant, the potential for misuse of the information is obvious. If, for example, the court ordered a record maintained by a criminal

---

[8]One of the motivations for the amendment to the state Constitution, adding privacy to the list of inalienable rights, was concern over "the ability to control circulation of personal information." The argument in favor of the amendment, printed in the state's election brochure, noted, inter alia, that " '[t]he proliferation of government and business records over which we have no control limits our ability to control our personal lives. Often we do not know that these records even exist and we are certainly unable to determine who has access to them.' " (*White* v. *Davis* (1975) 13 Cal.3d 757, 774 [120 Cal.Rptr. 94, 533 P.2d 222].) Thus, although we need not and do not attempt to determine the constitutionality of the statutory scheme here presented, neither can we ignore the impact of the right to privacy on the proper interpretation of the seemingly conflicting statutes.

justice agency to be sealed or destroyed because a defendant had been found to be factually innocent of the charges (Pen. Code, § 851.8, subds. (c), (d), and (j)), the information would still be available for sale by respondent. Or, to cite another example, if a defendant was granted statutory diversion, this information would be available to the public from respondent even though it could not be obtained from the California Department of Justice. (See *Central Valley Ch. 7th Step Foundation, Inc.* v. *Younger* (1989) 214 Cal.App.3d 145, 151 [262 Cal.Rptr. 496].) The only control on access to the information in respondent's possession would be the price he places on it. This is precisely the danger against which the Legislature intended to guard against when it enacted Penal Code sections 11105 and 13300.

Respondent does not contend that he is a person or entity authorized to obtain information pursuant to Penal Code section 13300, and the record clearly demonstrates that he is not. Therefore, remand is not necessary.

For the foregoing reasons, the judgment is reversed. Each party to bear its own costs.

Epstein, J., and Hastings, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 27, 1994.